**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **CHARLES JASON LIVELY,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action Nos. 2:15-07458** |
| | ) | |
| **DAVID BALLARD, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

Pending before the Court are the following: (1) Respondent's Motion for Summary Judgment (Document No. 36), filed on November 1, 2016; and (2) Petitioner's Motion for Summary Judgment (Document No. 40), filed on December 1, 2016. Having thoroughly examined the record in this case, the undersigned respectfully recommends that the District Court grant Respondent's Motion for Summary Judgment and deny Petitioner's Motion for Summary Judgment.

**PROCEDURAL HISTORY**

**A.    Criminal Action No. 05-F-157:**

On October 18, 2005, the Grand Jury of McDowell County, West Virginia, returned an Indictment against Petitioner charging him with one count of burglary (Count One); one count of grand larceny (Count Two); one count of first degree murder (Count Three); one count of first degree arson (Count Four); and one count of conspiracy to commit murder and arson (Count Five). State v. Lively, Case No. 05-F-157 (Cir. Ct. McDowell Co. November 21, 2006); (Document No. 23-6, pp. 2- 23.) Subsequently, Petitioner pled guilty to one count of petit larceny relating to the theft of a laptop computer in exchange for the dismissal of the burglary and grand larceny counts.

(Document No. 23-1, pp. 21 - 22.) Sentencing as to the petit larceny conviction was deferred until after the trial on the remaining counts. (Id.) Following a six-day jury trial, Petitioner was convicted of first-degree arson and first-degree murder with a recommendation of mercy. (Id., p. 22.) The conspiracy count was dismissed. (Id.) On July 31, 2007, the Circuit Court sentenced Petitioner to life with mercy for the first-degree murder conviction and a consecutive one-year sentence for the petit larceny conviction.[1] (Id., pp. 2 - 4.) On February 4, 2008, the Circuit Court re-sentenced Petitioner in order to reinstate his right to appeal. (Id., pp. 6 - 8.) Petitioner was again re-sentenced on August 11, 2008, for purpose of reinstating his right to appeal. (Id., pp. 10 - 12.)

On February 3, 2009, Petitioner, by counsel, J.L. Hickok, filed a Petition for Appeal with the West Virginia Supreme Court of Appeals. (Id., pp. 16 - 55.) In his appeal, Petitioner raised the following assignments of error:

1.      The Court erred in permitting the State to introduce evidence improperly under West Virginia Rules of Evidence, Rule 404(b):

     a.      The Court erred by permitting the introduction of irrelevant testimony concerning a fight that occurred more than two years prior to the fatal fire.

     b.      The Court erred by permitting the introduction of evidence of a prior arson attempt, evidence that was more prejudicial than probative.

     c.      The Court erred by failing to give the jury a limiting instruction.

2.      The Court erred by giving State's instruction "C" regarding concerted action.

3.      The evidence presented at trial was manifestly inadequate to establish the underlying prerequisite offense for the charge of felony murder.

4.      The Court erred by permitting the State to avoid the confrontation clause by

---

[1]   The Circuit Court noted that it was "not imposing an additional sentence for first degree arson because the State presented this case as felony murder."

bolstering the record with an accusation made by an undisclosed "confidential informant."

(Id., pp. 32 - 52.) The West Virginia Supreme Court granted the Petition for Appeal on April 29, 2009. (Document No. 23-2, p. 2.) Petitioner, by counsel, David Schles, filed his Brief asserting additional assignments of error. (Id., pp. 4 - 55.) Specifically, Petitioner asserted the following:

1.   The trial court erred by allowing admission of testimony relating to the alleged statement of an anonymous declarant, and of another non-testifying witness, under both the Confrontation Clause and hearsay analysis.

2.   The trial court further erred by not ordering the State to disclose to the defendant the identity of this alleged witness and any exculpatory evidence, information relevant to credibility or for impeachment, or otherwise material to preparation of the defense.

3.   The trial court erred in allowing the State to admit evidence under Rule 404(b) that created extreme unfair prejudice against the defendant which had no probative value or such slight probative value as to have been substantially outweighed by the danger of unfair prejudice, misleading the jury, confusion of the issues and constituted needless presentation of cumulative evidence.

    A.   Evidence pertaining to a theft of a laptop computer;

    B.   Evidence relating to a fistfight involving persons not connected to the victim;

    C.   Evidence pertaining to a prior arson allegation;

    D.   Evidence pertaining to alleged illegal drug activity;

    E.   The errors admitting the 404(b) evidence were compounded by the failure to give appropriate limiting instructions.

3.   The trial court erred by giving State's Instruction "C" regarding the concerted action principle because the evidence did not support the theory because no facts were presented showing a principal in the first degree set the fire and that the appellant was present and in some manner aided, encouraged, assisted or incited the first degree principal.

4.   The evidence adduced at trial was insufficient to convince any rational trier

3

of fact beyond a reasonable doubt that Lively was guilty of arson, and if the conviction for arson fails, the murder conviction must also fail because the State proceeded on felony-murder theory with arson as the predicate underlying felony.

5.     The trial court erred by permitting the State to publish a statement of Brian Salyers that, even if portions of it were properly admissible, included irrelevant and improper opinion testimony and discussions of unfairly prejudicial alleged bad acts and character evidence concerning Mr. Lively, Mr. Owens, and others.

6.     The cumulative or aggregated impact of the errors below resulted in an unfair trial requiring reversal under the "cumulative error doctrine" even if this Court should find none of the errors viewed separately and individually mandate reversal.

(Id., pp. 22 - 53.) By Per Curiam Opinion filed on June 16, 2010, the West Virginia Supreme Court

affirmed Petitioner's conviction and sentence. (Id., pp. 84 - 134.); State v. Lively, 226 W. Va. 81,

697 S.E.2d 117 (2010).

**B.     State *Habeas* Petition:**

On March 16, 2011, Petitioner, by counsel, Rico Moore and Scott Driver, filed his Petition

for Writ of *Habeas Corpus* and Memorandum in Support in the Circuit Court of Fayette County.

Lively v. Ballard, Case No. 11-C-118 (Cir. Ct. Fayette Co.); (Document No. 23-3, pp. 2 - 35.) In

his Petition, Petitioner raised the following grounds for *habeas* relief:

1.     Petitioner was denied effective assistance of counsel at critical stages of the proceeding prior to and during trial, and during the perfection of his direct appeal, in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article III, §§ 10 and 14 of the West Virginia Constitution.

A.     Trial counsel failed to file a timely motion for reduction of bond and the lack of pretrial investigation performed in response to information provided by the Petitioner;

B.     Trial counsel filed only simple form motions made up of boilerplate with virtually no language, contentions, or argument specific to the

4

case at bar;

C.      Trial counsel failed to file motions raising potential issues of judicial recusal or prosecutorial misconduct despite having acting knowledge of those issues;

D.      Trial counsel failed to independently investigate the findings of the State's expert witness, to file pleadings holding the State to its proof as to its expert's methodology, or seek expenses for the retention of a defense expert to assail the State expert's findings of arson;

E.      Trial counsel failed to object to inadmissible hearsay testimony, *Brady* violations, and Confrontation Clause issues.

2.      Appellate counsel acted ineffectively by failing to raise crucial issues in his petition for appeal, which were raised for the first time in Petitioner's brief or on oral argument.

3.      Petitioner was deprived of due process in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article III, §§ 10 and 14 of the West Virginia Constitution by the unethical and impermissible misconduct of the Circuit Clerk of McDowell County.

4.      Petitioner was deprived of due process in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article III, §§ 10 and 14 of the West Virginia Constitution by the failure of the presiding judge, the Honorable Booker T. Stephens, to recuse himself from the Petitioner's case despite the actions of the Circuit Clerk cited above, as well as the judge's familiarity and long-standing political relationship with the alleged victim.

5.      Petitioner was deprived of due process in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article III, §§ 10 and 14 of the West Virginia Constitution by the misconduct of the prosecuting attorney in deliberately suborning the intimidation of a material witness and in disregarding his affirmative duty to disclose potentially exculpatory information to defense counsel.

(Id., pp. 4 - 9.) By Order entered on May 17, 2011, the Circuit Court of Fayette County transferred

Petitioner's *habeas* case to the Circuit Court of McDowell County. (Id., pp. 37 - 39.) On December

4, 2012, the State filed its Response to Petitioner's Petition. (Id., pp. 40 - 52.) The Circuit Court

conducted an omnibus hearing on February 20, 2013. (Document No. 23-4.) The Circuit Court heard testimony from the following: (1) Michael David Brooks, former Circuit Clerk of McDowell County; (2) Sidney H. Bell, former prosecutor of McDowell County; (3) Honorable Booker T. Stephens, Circuit Court Judge of McDowell County; (4) Courtney Prater, a testifying witness during the criminal trial; (5) Brian Salyers, a testifying witness during the criminal trial; (6) Floyd A. Anderson, Petitioner's trial counsel; and (7) Tommy Owens, Petitioner's co-defendant.[2] (Id.) By "Findings of Fact and Conclusions of Law" entered on April 11, 2014, the Circuit Court denied Petitioner's *habeas* Petition. (Document No. 23-5, pp. 2- 15.)

Petitioner, by counsel, Rico Moore and Scott Driver, filed his appeal concerning the Circuit Court's decision denying his *habeas* Petition. (Id., pp. 14 - 54.) On August 18, 2014, Petitioner filed his brief raising the following grounds:

1. The Circuit Court erred in not ruling that the Petitioner was deprived of due process of law by the unethical partisan actions of the circuit clerk in attempting to intimidate and interrogate a material witness.

2. The Circuit Court erred in not ruling that the Petitioner was deprived of due process of law by the failure of the trial court judge to recuse himself from the case despite his own political and personal affiliation with the alleged victim as well as the actions of the circuit clerk.

3. The Circuit Court erred in not ruling that the Petitioner was deprived of due process of law by the ineffective assistance of his defense counsel at both trial and appellate levels.

4. The Circuit Court erred in not ruling that the Petitioner was deprived of due process of law by the misconduct of the prosecuting attorney in deliberately suborning the intimidation of a material witness and in disregarding his affirmative duty to disclose potentially exculpatory information to defense counsel.

---

[2]   Honorable John L. Cummings, Special Judge for McDowell County, presided over Petitioner's State *habeas* proceedings.

> 5.      The Circuit Court erred in failing to consider the cumulative effect of each error assigned above is, viewed as a whole, sufficient to have deprived the petitioner of due process of law.

(Id., pp. 25 - 52.) On November 18, 2014, the State filed "Respondent's Brief." (Id., pp. 56 - 79.) On December 15, 2014, Petitioner filed his Reply Brief. (Id., pp. 81 - 86.) By Memorandum Decision filed on May 15, 2015, the West Virginia Supreme Court of Appeals affirmed the decision of the Circuit Court. (Id., pp. 88 - 94.); Lively v. Ballard, 2015 WL 3388309 (W. Va. May 15, 2015).

**E.      Section 2254 Petition:**

Petitioner, acting *pro se*, filed a Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus By a Person in State Custody* on July 8, 2015.[3] (Document No. 5.) In his Petition, Petitioner alleges the following grounds for *habeas* relief:

> 1.      Ineffective Assistance of Counsel;
>
> 2.      Violation of due process based on actions by Circuit Clerk Michael Brooks admittingly contacting Witness Brian Salyers;
>
> 3.      Violation of due process based on actions of Prosecuting Attorney Sid Bell;
>
> 4.      Violation of due process because Judge Stephens had a political and personal relationship with the victim;
>
> 5.      Violation of due process by Keith Auville by threatening [the] recanting witness' family and himself.
>
> 6.      Violation of due process by lead investigator, Ron Blevins, for having an adulterous relationship with Lewis Christian the only one with a key to

---

[3]   By Standing Order, this matter was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings of fact and a recommendation for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 2.) By Order entered on January 13, 2016, the above case was referred to the undersigned United States Magistrate Judge for submission of proposed findings of fact and a recommendation for deposition pursuant to 28 U.S.C. § 636(b)(1)(B). (Document No. 31.)

Doc's house.

7.     Improper jury instruction and the use of Rule 404(b) evidence.

8.     Ineffectiveness of appellate counsel.

9.     Improper introduction of testimony of confidential informant.

10.    Violation of due process because the recanting witness was high when he gave his said recanted statement to police.

11.    Violation of due process because the medical examiner, Hamada Mahamad, testified Doc (the victim) was murdered.

12.    The introduction of the State's nationally recognized expert, Craig Byler.

13.    Violation of due process by Assistant State Fire Marshal Robbie Bailey, who was the lead investigator.

14.    The loss and improper storage of evidence.

(Id., pp. 5 - 12 and Document No. 5-2.) As an Exhibit, Petitioner attaches a copy of Justice Ketchum's dissenting opinion in State v. Lively, No. 34856 (June 16, 2010).

By Order entered on July 10, 2015, the undersigned directed Respondent to file a Response to Petitioner's Petition. (Document No. 7.) On July 31, 2015, Rico Moore filed a Notice of Appearance on behalf of Petitioner and a "Motion to File Amended Petition." (Document Nos. 10 and 11.) By Order entered on August 3, 2015, Judge VanDervort granted Petitioner's "Motion to File Amended Petition" and directed that Petitioner file his amended Petition by September 4, 2015. (Document No. 12.)

On September 4, 2015, Petitioner, by counsel, Mr. Moore, filed his Amended Section 2254 Petition and Memorandum in Support. (Document Nos. 19 and 20.) As grounds for *habeas* relief, Petitioner asserts as follows (Id.):

1.     The West Virginia Supreme Court of Appeals erred in holding that trial

8

counsel was effective despite a comprehensive failure to safeguard the petitioner's rights or to subject the State's case to adversarial testing.

2.    The West Virginia Supreme Court of Appeals erred in holding that appellate counsel was effective despite explicitly noted failure which foreclosed multiple grounds for relief entirely.

3.    The West Virginia Supreme Court of Appeals erred in holding that the intimidation of a witness by an officer of the trial court does not rise to the level of a constitutional violation and did not deprive the petitioner of due process.

4.    The West Virginia Supreme Court of Appeals erred in holding that the prosecuting attorney's suborning of the intimidation of a witness by an officer of the trial court does not rise to the level of a constitutional violation and did not deprive the petitioner of due process.

5.    The West Virginia Supreme Court of Appeals erred in holding that the prosecuting attorney's refusal to disclose the identity of an informant was not a breach of his affirmative duties under *Brady v. Maryland*.

6.    The West Virginia Supreme Court of Appeals erred in holding that the failure of the trial judge to recuse himself from the proceedings, despite his longstanding personal and political relationships with the alleged victim, did not deprive the petitioner of due process.

7.    The West Virginia Supreme Court of Appeals erred in holding that the admission into evidence of testimony regarding the statement of an unidentified, unavailable informant was not a violation of the Confrontation Clause.

On November 10, 2015, Respondent filed his Answer, "Motion to Dismiss for Failure to Exhaust," and Memorandum in Support. (Document Nos. 23 - 25.) As Exhibits, Respondent attaches the following: (1) A copy of the Circuit Court's Sentencing Order as filed in State v. Lively, Case No. 05-F-157 (Cir. Ct. McDowell Co. November 21, 2006) (Document No. 23-1, pp. 2 - 4; (2) A copy of the Circuit Court's "Agreed Resentencing Order" dated February 4, 2008 (Id., pp. 6 - 8.); (3) A copy of the Circuit Court's "Agreed Resentencing Order" dated August 11, 2008 (Id., pp. 10 - 12.); (4) A copy of the Circuit Court's "Agreed Order" extending time for appeal (Id.,

p. 14.); (5) A copy of Petitioner's Petition for Appeal as filed with the West Virginia Supreme Court on February 3, 2009 (Id., pp. 16 - 55.); (6) A copy of the West Virginia Supreme Court's Order entered on April 29, 2009, granting Petitioner's Petition for Appeal (Document No. 23-2, p. 2.); (7) A copy of Petitioner's Brief as filed with the West Virginia Supreme Court on September 1, 2009 (Id., pp. 4 - 55.); (8) A copy of the State's Brief as filed with the West Virginia Supreme Court on September 30, 2009 (Id., pp. 57 - 82.); (9) A copy of the West Virginia Supreme Court's Per Curiam Opinion filed on June 16, 2010, affirming Petitioner's conviction and sentence (Id., pp. 84 - 134.); (10) A copy of Petitioner's Petition for Writ of *Habeas Corpus* and Memorandum in Support as filed on May 16, 2011, in the Circuit Court of Fayette County (Document No. 23-3, pp. 2 - 35.); (11) A copy of Fayette County Circuit Court's Order transferring Petitioner's *habeas* Petition to the Circuit Court of McDowell County as entered on May 17, 2011 (Id., pp. 37 - 38.); (12) A copy of the State's "Response to Petition" as filed with the Circuit Court of McDowell County on December 4, 2012 (Id., pp. 40 - 52.); (13) A copy of the transcripts from the omnibus hearing conduct on February 20, 2013 (Document No. 23-4.); (14) A copy of the Circuit Court's "Findings of Fact and Conclusions of Law" denying Petitioner's Petition for Writ of *Habeas Corpus* entered on April 11, 2014 (Document No. 23-5, pp. 2 - 12.); (15) A copy of Petitioner's Brief as filed with the West Virginia Supreme Court on August 18, 2014 (Id., pp. 14 - 54.); (16) A copy of "Respondent's Brief" as filed with the West Virginia Supreme Court on November 18, 2014 (Id., pp. 56 - 79.); (17) A copy of Petitioner's Reply Brief as filed with the West Virginia Supreme Court on December 15, 2014 (Id., pp. 81 - 86.); (18) A copy of the West Virginia Supreme Court's "Memorandum Decision" filed on May 15, 2015, affirming the decision of the Circuit Court (Id., pp. 88 - 94.); (19) A copy of the West Virginia Supreme Court's Mandate

entered on June 15, 2015 (Id., p. 96.); (20) A copy of the Grand Jury Transcripts (Document No. 23-6, pp. 2 - 23.); (21) A copy of the transcripts from the Suppression Hearing conducted in July 18, 2006, in Case No. 05-F-157 (Id., pp. 25 - 66.); (22) A copy of the transcripts from the Rule 404(b) hearing conducted on November 6, 2006, in Case No. 05-F-157 (Id., pp. 68 - 184.); (23) A copy of Petitioner's trial transcripts (Document Nos. 23-7, 23-8, 23-9, 23-10, 23-11, and 23-12.); and (24) A copy of the transcripts of the Post-Trial Motions and Sentencing hearing conducted on July 31, 2007 (Document No. 23-13.).

On December 14, 2015, Petitioner, by counsel, Scott Driver,[4] filed his Response in Opposition. (Document No. 28.) On December 15, 2015, Respondent filed his Reply. (Document No. 29.) By Proposed Findings and Recommendation entered on June 3, 2016, the undersigned recommended that Respondent's "Motion to Dismiss for Failure to Exhaust" be denied and the matter be referred back to the undersigned for further proceedings. (Document No. 32.) Neither party filed Objections. By Memorandum Opinion and Order entered on September 1, 2016, United States District Judge Thomas E. Johnston adopted the undersigned recommendation, denied Respondent's "Motion to Dismiss for Failure to Exhaust," and referred to matter back to the undersigned for further proceedings. (Document No. 33.) On September 19, 2016, the undersigned entered an Order directing Respondent to file a Response addressing the merits of Petitioner's claims. (Document No. 34.)

On November 1, 2016, Respondent filed his Motion for Summary Judgment and Memorandum in Support. (Document Nos. 36 and 37.) On December 1, 2016, Petitioner, by

---

[4]   Scott Driver filed his Notice of Appearance on behalf of Petitioner on December 14, 2015. (Document No. 27.)

counsel, Mr. Rico R. Moore, filed Petitioner's "Motion for Summary Judgment and Response to Respondent's Motion for Summary Judgment." (Document No. 40.) On December 6, 2016, Respondent filed his "Reply to Petitioner's Response to Respondent's Motion for Summary Judgment." (Document No. 41.)

## **FACTUAL BACKGROUND**

The victim, Dr. Ebb K. Whitley, Jr., was nearly paralyzed due a back injury he suffered in a fall in 2000. (Document No. 23-7, p. 84, Document No. 23-8, p. 17, 19 - 20.) Dr. Whitely was confined to a wheelchair, and had limited use of his hands. (Document No. 23-8, p. 20, 184.) Dr. Whitley, however, had a sound mind and continued to operate his pain clinic with the help of staff. Petitioner's mother, Kathy Lively, was a nurse that had worked for Dr. Whitely for more than 20 years. (Id., p. 32.) Ms. Lively would met with patients and write prescriptions on behalf of Dr. Whitely. (Document No. 23-7, p. 85 and Document No. 23-8, p. 181.) Testimony from another staff member, Ms. Christian, revealed that Petitioner had been visiting the pain clinic three or four times a week and his mother (Ms. Lively) was giving him injections and medication. (Document No. 23-8, p. 202.) Ms. Christian testified that Petitioner was not a patient of Dr. Whitely. (Id.) Testimony further revealed that Ms. Lively had been writing prescriptions to herself and having Ms. Christian give her the medication. (Id., pp. 228-29.) Approximately one week prior to Dr. Whitley's death, Dr. Whitely moved out of the home he shared with his wife because he was unhappy. (Id., pp. 27 – 30, 102.) Upon moving out of the home he shared with his wife on Coon Branch Mountain, Dr. Whitely moved into the residence with Ms. Lively and Petitioner. (Id., pp. 27 – 30.) After about five days, Dr. Whitely contacted his son Jack requesting that he be moved from the Lively residence to his second residence in Iaeger. Dr. Whitely's sons, Jack and Jeff,

12

testified that Dr. Whitely appeared to be upset or afraid when they arrived at the Lively residence and he was anxious to leave the Lively residence. (Id., p. 30, 32, 97, 103-04.) Jack testified that Dr. Whitely and Petitioner had "got into it" and Dr. Whitely had stated he thought Petitioner was going to hit him. (Id., p. 96-97.) Jack and Jeff then moved Dr. Whitely into his Iaeger residence. A few days later, Dr. Whitely took all keys, including the key for the narcotics room, from Ms. Lively, removed Ms. Lively's name from his banking account, and forbid Ms. Lively from writing any more prescriptions. (Id., pp. 186-91.) Dr. Whitely specifically told Ms. Christian that he wanted her "to monitor the narcotic prescriptions, that Kathy [Lively] wasn't to sign off on them no more." (Id., p. 191.) When Ms. Lively was informed of the foregoing changes, Ms. Lively had a heated argument with Dr. Whitely and told him "I'll kill you, you son of a bitch." (Id., pp. 119 – 20, 126-27, 193.) The next day, Dr. Whitely was found dead in his Iaeger residence following a fire. Dr. Whitely's body was found beside his bed and his motorized chair, which was always placed beside his bed, was found across the room. Fire experts testified that there were two points of origin for the fire, one downstairs and one upstairs in the victim's bedroom. Samples taken from the floor in the bedroom revealed the presence of ignitable liquid. Following an investigation, Brian Salyers told police that he drove Petitioner and Mr. Owens to Dr. Whitely's residence on the morning of the fire. Mr. Salyers, however, later recanted his statement. Mr. Salyers testified at trial that he did not drive Petitioner or Mr. Owens to Dr. Whitely's residence on the morning of the fire. (Document No. 23-9, pp. 100-15.) Mr. Salyers stated that he made the incriminating statement only after officers threatened to put him in jail. (Id.) Jason Ritchie testified that while he was an inmate at the regional jail, Petitioner told him that he and Mr. Owens went to the victim's home to steal money and drugs and as they were leaving the home, Mr. Owens set the home on fire.

(Document No. 23-9, pp. 56 - 57, 62 – 63.)

## THE APPLICABLE STANDARDS

Federal *habeas* relief is available to a State prisoner under 28 U.S.C. § 2254, only if the prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a)(2002); See also Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995). Section 2254(d) provides that when the issues raised in a Section 2254 Petition were raised and considered on the merits in State Court *habeas* proceedings, federal *habeas* relief is unavailable unless the State Court's decision:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000), the Supreme Court stated that under the "contrary to" clause in § 2254(d)(1), a federal *habeas* Court may grant *habeas* relief "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523. A federal *habeas* Court may grant relief under the "unreasonable application" clause of § 2254(d)(1) where the State Court identified the appropriate Supreme Court precedent but unreasonably applied the governing principles. Id.(A "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."); also see Woods v. Donald, 575 U.S. ___, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(*per curiam*)(For a state court's decision to be an unreasonable

14

application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") Thus, a litigant must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S 86, 103, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011). When a petitioner challenges the factual determination made by the State Court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the fact.'" 28 U.S.C. § 2254(d)(2). In reviewing a State Court's ruling on post-conviction relief, "we are mindful that 'a determination on a factual issue made by the State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.'" Tucker v. Ozmint, 350 F.3d 433, 439 (4th Cir. 2003); also see 28 U.S.C. § 2254(e).[5] On this framework, consideration should be given to the

---

[5] Title 28, U.S.C. Section 2254(e) provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.
>
> (2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that –
>> (A) the claim relies on –
>>> (I) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder

Motions for Summary Judgment.

### **Motion for Summary Judgment:**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Once the moving party demonstrates the lack of evidence to support the non-moving party's claims, the non-moving party must go beyond the pleadings and make a sufficient showing of facts presenting a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 - 87, 106 S.Ct.1348, 89 L.Ed.2d 538 (1986). All inferences must be drawn from the underlying facts in the light most favorable to the non-moving party. Matsushita, 475 U.S. at 587, 106 S.Ct. at 1356. Summary judgment is required when a party fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual issues proving other elements of the claim. Celotex, 477 U.S. at 322-23, 106 S.Ct. at 2552-53. Generally speaking, therefore, summary judgment will be granted unless a reasonable jury could return a verdict for the non-moving party on the evidence presented. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If no facts or inferences which can be drawn from the circumstances will support Petitioner's claims, summary judgment is appropriate.

### **ANALYSIS**

### **1. Ineffective Assistance of Counsel:**

The standards established by the United States Supreme Court in determining whether or

---

would have found the applicant guilty of the underlying offense.

not a defendant was denied his Sixth Amendment right to effective assistance of counsel are set forth in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Ineffective assistance of counsel claims consist of mixed questions of fact and law. Id. Under the two-pronged standard, a Petitioner must show (1) that counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) that counsel's deficiency resulted in prejudice so as to render the results of the trial unreliable. Id. at 687-91, 104 S.Ct. at 2064-66. Counsel's performance is entitled to a presumption of reasonableness and judicial review of counsel's strategic decisions is highly deferential. Id. at 689, 104 S.Ct. at 2065. Thus, a petitioner challenging his conviction on the grounds of ineffective assistance must overcome a strong presumption that the challenged actions constituted sound trial strategies. Id. The Court in Strickland cautioned against the ease in second-guessing counsel's unsuccessful assistance after the adverse conviction and sentence are entered. Id. The Fourth Circuit Court of Appeals specifically recognized that ineffective assistance of counsel may not be established by a "Monday morning quarterbacking" review of counsel's choice of trial strategy. Stamper v. Muncie, 944 F.2d 170, 178 (4th Cir. 1991), cert. denied, 506 U.S. 1087 (1993).

Where the State court applies the Strickland standard in the adjudication of a petitioner's ineffective assistance of counsel claim, the standard of review in a Section 2254 proceeding differs from the standard used in the direct review of a Strickland challenge. The United States Supreme Court has explained as following:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This differs from asking whether defense counsel's performance fell below *Strickland's* standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are

17

different. For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law. *Williams*, supra, at 410, 120 S.Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

Harrington, supra, 562 U.S. at 101, 131 S.Ct. at 785. The Supreme Court acknowledged that "[s]urmounting *Strickland's* high bar is never an easy task," and "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." Id., 562 U.S. at 105, 131 S.Ct. 788("The standards created by *Strickland* and § 2254(d) are both 'highly deferential," and when the two apply in tandem, review is 'doubly' so."); also see Woods, supra, 575 U.S. ___, 135 S.Ct. at 1376(For claims of ineffective assistance of counsel, "AEDPA review must be doubly deferential in order to afford both the state court and the defense attorney the benefit of the doubt.")(internal quotations omitted). The Supreme Court warned that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)." Harrington, supra, 562 U.S. at 105, 131 S.Ct. 788. Under Section 2254(d), "a habeas court must determine what arguments or theories supported, or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurist could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the United States Supreme Court]." Id., 562 U.S. at 101, 131 S.Ct. at 785. To obtain *habeas* relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id., 562 U.S. at 103, 131 S.Ct. at 787. Applying these standards, and based upon all of the evidence of record, the Court will address the merits of each of Petitioner's allegations of ineffective assistance of counsel as set forth above.

A.    **Ineffectiveness of Trial Counsel:**

i.    ***Insufficient communication and investigation.***

In his Amended Petition, Petitioner argues that trial counsel did not sufficiently investigate the particulars of the petitioner's case or possible defenses. (Document No. 20, pp. 8 - 9.) Petitioner states that by a letter dated November 28, 2005, he notified the trial court that "his and his family's attempts to communicate with Mr. Anderson had been stymied and their suggestions as to avenues of investigation flatly ignored." (Id., p. 9.) Petitioner claims this was not "a matter of discerning counsel's strategy in allocating resources to investigating particular paths and theories at the expense of other; the petitioner repeatedly complained of a lack of any communication or investigation whatsoever." (Id.)

In his Motion for Summary Judgment, Respondent argues that "Petitioner does not suggest what additional investigation should have been done or what such investigation would have found." (Document No. 37, p. 9.) Respondent further contends that Petitioner has failed to satisfy the second Strickland prong because "there is nothing to suggest that the outcome would have been any different." (Id., p. 10.)

In his Response and Motion for Summary Judgment, Petitioner argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision." (Document No. 40, p. 3.) Petitioner claims that the West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, such as counsel's failure to investigate but the West Virginia Supreme Court unreasonably concludes that trial counsel was effective. (Id., p. 4.)

In Reply, Respondent first states that "[w]hile Petitioner styles his pleadings as a Motion

19

for Summary Judgment and requests, as an alternative argument, that he be granted summary judgment, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent next argues Petitioner's general claim that counsel did not investigate is insufficient. (Id., p. 2.) Respondent notes that Petitioner "does not even cite to the record to suggest support for this claim." (Id.) Respondent, however, argues that the record supports a finding that counsel conducted an adequate investigation. (Id.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court found as follows:

> Petitioner's argument regarding a deficient investigation lacks specificity sufficient to allow us to evaluate this claim. However, we note that at the evidentiary hearing, Mr. Anderson testified that he hired an investigator who "investigated at least ten different people" and that, of those ten, Mr. Anderson personally spoke with six or seven, including speaking with Mr. Salyers several times. He also testified that he met petitioner in jail between five and fifteen times and spoke with him on the phone, as well. Based on the lack of specificity in petitioner's argument and the record before this Court, we cannot find that the circuit court erred in determining that petitioner did not carry his heavy burden of showing that he received ineffective assistance related to his counsel's investigation.

(Document No. 23-5, p. 93.)

The undersigned finds that there is no evidence that the State *habeas* Court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the State courts correctly referenced the Strickland standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, argues that the State Courts unreasonably applied Strickland to the facts of his case. Petitioner argues that the West Virginia Supreme Court unreasonably concluded in his *habeas* case that trial counsel was effective after "repeatedly not[ing] the deficiencies in the performance" of trial counsel. Petitioner's argument,

20

however, is misleading. A review of the record reveals that the West Virginia Supreme Court did not "repeatedly" note deficiencies in trial counsel's performance in its decision denying Petitioner's *habeas* appeal. Petitioner appears to be referring to the West Virginia Supreme Court's notation of trial counsel's failure to preserve the record on certain issues in its decision denying Petitioner's direct appeal. Clearly, the West Virginia Supreme Court was not addressing the issue of ineffective assistance of counsel in its decision denying Petitioner's direct appeal. In its decision denying Petitioner's *habeas* appeal, the West Virginia Supreme Court specifically considered and rejected Petitioner's claim that trial counsel was ineffective regarding his investigation. Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." The record reveals that during the omnibus hearing, trial counsel testified that at the time of Petitioner's trial he had approximately 10-years of experience as a public defender and had tried four or five murder cases. (Document No. 23-4, pp. 103 - 04.) Concerning his communication with Petitioner, trial counsel testified that he meet with Petitioner between five and fifteen times, he spoke with Petitioner on the phone several times, and he spoke with Petitioner's mother several times. (Id., p. 104.) Trial counsel further testified that he hired an investigator concerning Petitioner's criminal case and the investigator interviewed at least ten people (Id., p. 108.) Trial counsel explained that he then interviewed six or seven of those ten people. (Id., p. 109.) Specifically, trial counsel explained that he interviewed some witnesses, such as Brian Salyers "at least three to four times." (Id.) Trial counsel further described his investigation concerning the alleged witness tampering by Circuit Clerk Michael Brooks. (Id., pp. 110 – 112.)

21

Trial counsel testified that he had adequate time to investigate and prepare for the criminal trial. (Id., p. 124.) The record is void of any indication that trial counsel was deficient in his communication or investigation or that Petitioner was prejudiced by such. Specifically, Petitioner does not identify what would have been revealed by a more thorough investigation or additional communications and how such would have changed the outcome. Based upon the foregoing, the undersigned cannot find that the State court's application of <u>Strickland</u> was unreasonable under § 2254(d).

Therefore, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

### ii.     *Motion for Reduction Bond.*

In his Amended Petition, Petitioner complains that trial counsel failed to file a Motion for Reduction of Bond. (Document No. 20, p. 9.) Petitioner notes that he communicated to the trial court "his distress at counsel's failure to file a timely motion for reduction of bond." (Id.) Petitioner claims that the West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, but the West Virginia unreasonably concludes that trial counsel was effective. (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner cannot establish trial counsel acted ineffectively under the <u>Strickland</u> standard based upon his failure to file a

Motion to Reduce Bond. (Document No. 37, p. 10.) Respondent argues that the West Virginia Supreme Court was reasonable in its conclusion that there was "nothing to suggest that had Petitioner's trial counsel made another motion for reduction of bond that it would have been granted or that it would have changed the outcome of his conviction as it is entirely unrelated to the jury's determination." (Id.)

In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner generally argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision." (Id., p. 3.) Petitioner claims that the West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, but the West Virginia Supreme Court unreasonably concludes that trial counsel was effective. (Id., p. 4.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent notes that Petitioner fails to specifically address trial counsel's failure to file a motion for reduction of bond in his Response and Motion for Summary Judgment. (Id., pp. 2 – 3.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court found as follows:

> Without reference to the record, petitioner contends that he communicated to the circuit court his distress at counsel's failure to timely file a motion for reduction of bond. However, it is clear that his alleged error cannot satisfy the second prong of the *Strickland/Miller* test.

(Document No. 23-5, p. 93.)

The undersigned finds that there is no evidence that the State *habeas* Court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the State courts correctly cited the <u>Strickland</u> standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, argues that the State Courts unreasonably applied <u>Strickland</u> to the facts of his case. Petitioner again argues that the West Virginia Supreme Court unreasonably concluded in his *habeas* case that trial counsel was effective after "repeatedly not[ing] the deficiencies in the performance" of trial counsel. Again, the undersigned finds Petitioner's argument is misleading. A review of the record reveals that the West Virginia Supreme Court did not "repeatedly" note deficiencies in trial counsel performance in its decision denying Petitioner's *habeas* appeal. Petitioner appears to be referring to the West Virginia Supreme Court's notation of trial counsel's failure to preserve the record on certain issues in its decision denying Petitioner's direct appeal. Clearly, the West Virginia Supreme Court was not addressing the issue of ineffective assistance of counsel in its decision denying Petitioner's direct appeal. In its decision denying Petitioner's *habeas* appeal, the West Virginia Supreme Court specifically considered and rejected Petitioner's claim that trial counsel was ineffective regarding his failure to file a motion for reduction of bond. Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." The record reveals that during the omnibus hearing, trial counsel testified Petitioner had "at least one [bailing hearing], maybe more than two." (Document No. 23-4, p. 107.) There is no indication in the record that the filing of a

motion for reduction of bond would have yield any different results than what occurred during the prior bail hearings. Further, there is no evidence establishing that Petitioner was prejudiced by trial counsel's failure to file a motion for reduction of bond. Thus, the undersigned cannot concluded that the West Virginia Supreme Court unreasonably applied <u>Strickland</u> when it concluded that Petitioner was not prejudiced by trial counsel's failure to file a motion for reduction in bond. There is no reasonable probability that, but for counsel's alleged failure to file a motion for reduction of bond, the results of the proceeding would have been different. Therefore, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

### iii.    *Motion to Recuse:*

In his Amended Petition, Petitioner alleges that trial counsel acted ineffectively in failing to file a Motion to Recuse concerning Judge Stephens. (Document No. 20, p. 9.) Petitioner states that "despite Judge Stephens' well-known personal and professional relationship with Dr. Whitley, defense counsel did not file motions raising potential issues of judicial recusal." (<u>Id.</u>)

In his Motion for Summary Judgment, Respondent argues trial counsel was not ineffective in failing to file a motion to recuse Judge Stephens. (Document No. 37, pp. 11 – 12.) Respondent contends that the State court "properly found that the decision regarding the motion to recuse 'was a tactical and strategic decision made by trial counsel after consultation with petitioner and his mother.'" (<u>Id.</u>, p. 11.) Respondent further notes that the West Virginia Supreme Court properly

25

concluded that "Petitioner has failed to identify any evidence of actual prejudice or bias on the part of the trial judge's decision to serve as the trial judge, instead making speculative arguments." (Id., pp. 11 – 12.)

In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner generally argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision." (Document No. 40, p. 3.) Petitioner claims that the West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, but the West Virginia Supreme Court unreasonably concludes that trial counsel was effective. (Id., p. 4.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent notes that Petitioner fails to specifically address trial counsel's failure to file a motion to recuse in his Response and Motion for Summary Judgment. (Id., pp. 2 – 3.)

Regarding Petitioner's above claim, the West Virginia Supreme Court first considered and denied Petitioner's *habeas* claim that that the trial court violated his right to due process by failing to voluntarily recuse himself. (Document No. 23-5, p. 91 - 92.) The West Virginia Supreme Court then concluded that trial counsel did not act ineffectively in failing to file a motion to recuse. (Id., pp. 92 – 93.) In support the West Virginia Supreme Court stated, in pertinent part, as follows:

> It should also be noted that petitioner's codefendant, Mr. Owens, was tried and acquitted in a separate trial presided over by the same trial judge. Further, petitioner

26

ignores the fact that the trial judge testified during the habeas proceeding that he "had as much respect for [Dr.] Whitley and Kathy Lively as anyone could have, and they both respected [him]." Kathy Lively is petitioner's mother who was a long-time employee of Dr. Whitely. . . . Petitioner has failed to identify any evidence of actual prejudice or bias on the part of the trial judge's decision to serve as the trial judge, instead making speculative arguments. While petitioner need not present proof of actual bias, the question is "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented. *Id.* at 870 (quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Based on the record before this Court in the matter, we find that the trial judge in the instant case did not err in failing to voluntary recuse himself in the underlying criminal matter.

(Document No. 23-5, pp. 91 - 92.)

The undersigned finds that there is no evidence that the State *habeas* Court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the State court correctly referenced the <u>Strickland</u> standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, argues that the State Court unreasonably applied <u>Strickland</u> to the facts of his case. Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." The record reveals that during the omnibus hearing, trial counsel explained that he discussed requesting a change of venue and the recusal of Judge Stephens with Petitioner and Petitioner's mother. (Document No. 23-4, pp. 119 – 121, 137.) Trial counsel stated that he requested a change of venue because of concern that Petitioner would not "get a fair trial down here . . . [b]ecause of [the victim's] notoriety and popularity within the county." (<u>Id.</u>, p 119.) Trial counsel acknowledged

that he was aware that Judge Stephens had a "relationship" with the victim "through the Democratic Committee." (Id., p. 120.) Trial counsel testified that the recusal of Judge Stephens "was an issue that we had discussed, and we just - - we did not do it." (Id.) Trial counsel confirmed that Petitioner's mother was "just as involved in politics as [the victim] was" and she was on the Executive Committee." (Id., p. 138.) The State *habeas* court determined that "[t]rial counsel's decision not to ask Judge Stephens to recuse himself was a tactical and strategic decision made by trial counsel after consultation with petitioner and his mother." (Document No. 23-5, p. 7.) Decisions concerning what motions should be filed are questions of strategy for trial counsel. An attorney's strategic decision is presumed reasonable and protected from second guessing under Strickland. Furthermore, Petitioner has failed to present any evidence indicating that he was prejudiced by counsel's failure to file a motion to recuse Judge Stephens. The record reveals that Petitioner's co-defendant was acquitted of the same charges during a jury trial before Judge Stephens. There is no reasonable probability that Petitioner would not have been convicted, but for trial counsel's failure to file a motion to recuse of Judge Stephens. Thus, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

### iv.    *Prosecutorial Misconduct:*

In his Amended Petition, Petitioner argues that trial counsel was ineffective in failing to assert prosecutorial misconduct. (Document No. 20, p. 9.) Petitioner explains that trial counsel was

"aware of a wildly improper communication between the prosecutor, the circuit clerk, and the family of a central material witness for the State" but failed to file any written pleadings addressing this glaring impropriety, did not move the court to inquire of the offending clerk on the record, and offered only a token protest to the State's blithe assurances of its innocuous motives." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner cannot establish trial counsel acted ineffectively under the Strickland standard based upon his failure to file a motion regarding prosecutorial misconduct. (Document No. 37, p. 12.) Respondent first contends that the record reveals that trial counsel did make an oral motion to dismiss based upon the prosecutor's "tempering with the witness for the defense." (Id.) Furthermore, Respondent argues that the State habeas court correctly determined that "[t]he prosecuting attorney did not suborn or intimidate a witness." (Id.) Accordingly, Respondent argues that "because Petitioner's trial counsel did make a motion and the Circuit Court heard evidence regarding the issue, it is clear that Petitioner's trial counsel was not deficient and that the outcome would have been no different." (Id.)

In his Response and Motion for Summary Judgment, Petitioner argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision."(Document No. 40, pp. 3 - 4.) Petitioner states that he "does not just argue that trial counsel should have made some paper filing regarding witness interference, but that he should have raised some effectual discomfiture with it in the first place." (Id., p. 3.) Petitioner complains that even though trial counsel made an oral motion to dismiss, trial counsel "did not press the issue and was obviously embarrassed to even bring it up." (Id.) Petitioner then states that "it never occurred to [trial counsel], the trial judge, or anyone else

29

to perhaps bring the Clerk down the hall to inquire as to his conduct." (Id.) Petitioner asserts that "[a]ny reasonable trial attorney would have been apoplectic about such blatantly unethical behavior by officers of the Court, one of whom was a literal employee of the Circuit Court itself." (Id., p. 4.) Petitioner contends that the West Virginia Supreme Court was unreasonable in its determination that trial counsel was not ineffective based on the foregoing. (Id.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent first argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Next, Respondent notes that while Petitioner complains that trial counsel failed to "bring the Clerk down the hall to inquire as to his conduct," such an action was not possible because "the trial was moved to another county and was held in a different Courthouse." (Id., p. 2.) Respondent further contends that Petitioner fails to recognize that there was not witness intimidate because the witness testified on Petitioner's behalf at trial. (Id.) Thus, Respondent contends that Petitioner cannot establish any prejudice from trial counsel's failure to file a motion regarding prosecutorial misconduct or for failing to "press the issue." (Id.)

Regarding Petitioner's above claim, the West Virginia Supreme Court found his to claim to be without merit. (Document No. 23-5, p. 93.) Specifically, the West Virginia Supreme Court stated "[w]ith regard to his complaint that Mr. Anderson never raised any issue of prosecutorial misconduct, it appears from the record that he learned of the alleged misconduct shortly before trial and that he did address that issue with the trial court." (Id.)

The undersigned finds that there is no evidence that the State *habeas* Court's determination

on the above claim was contrary to, or an unreasonable application of, clearly established federal

law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the

State courts correctly referenced the <u>Strickland</u> standard as applicable law to Petitioner's

ineffective assistance of counsel claim. Petitioner, however, argues that the State courts

unreasonably applied <u>Strickland</u> to the facts of his case. Considering what arguments or theories

supported, or could have supported the West Virginia Supreme Court's decision, the undersigned

finds that the Court's ruling was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." The record reveals that during the omnibus hearing, trial counsel testified that he

made an oral motion "to dismiss the trial based upon [Circuit Court Clerk] Brooks' tampering with

the witness for the defense or even the State's witness." (Document No. 23-4, p. 111.) Furthermore,

testimony from the Prosecutor revealed that he did not suborn or intimidate a witness. (<u>Id.</u>, pp. 32

– 44, 52 – 54.) The Prosecutor stated that he was having difficulty reaching Witness Brian Salyers.

(<u>Id.</u>, p. 32.) The Prosecutor explained that Witness Salyers had given a tape-recorded statement to

police officers during the underlying investigation. (<u>Id.</u>, pp. 33 – 34.) The Prosecutor stated that

Witness Salyers admitted to facts that incriminated Petitioner and the co-defendant. (<u>Id.</u>, p. 33.)

The Prosecutor, however, testified that he had not met with Witness Salyers and Witness Salyers

was not responding to his telephone calls. (<u>Id.</u>, p. 34.) The Prosecutor stated that although he was

not yet aware that Witness Salyers was recanting his prior statement, he was suspicious due to

Witness Salyers' lack of contact. (<u>Id.</u>, pp. 34 – 35.) During a conversation with Clerk Brooks, the

Prosecutor mentioned his difficulty contacting Witness Salyers. (<u>Id.</u>, pp. 36 - 37.) The Prosecutor

explained that Clerk Brooks "told me that he was acquainted with Mr. Salyers' mother and the

31

family, and that he would attempt to contact them, or him, and ask him to come in and meet with me." (Id.) The Prosecutor stated that he asked Clerk Brooks to make contact as a "friend" of the Salyers' family and not as his official capacity as the Circuit Clerk. (Id., p. 53.) The Prosecutor explained that he had known Clerk Brooks for years because Clerk Brooks was a preacher and the former Sheriff. (Id., pp. 35 -37.) The record reveals that Clerk Brooks called Witness Salyers' residence and spoke to Courtney Prater, who was Witness Salyers' girlfriend. (Id., p. 39.) Ms. Prater testified that Clerk Brooks inquired as to whether Witness Salyers was changing his statement and advised Ms. Prater that it would cause "problems" if Witness Salyers testified falsely. (Id., pp. 81 – 84.) Clerk Brooks, however, never spoke to Witness Salyers. (Id., pp. 39, 81, 84.) The Prosecutor further testified that he only requested Clerk Brooks to ask Witness Salyers "to come in and talk with me or arrange for me to meet with Brian Salyers to talk with him before trial." (Id., p. 39.) The Prosecutor stated that he never intended for Clerk Brooks to express any concern regarding testifying falsely. (Id., p. 40.) The Prosecutor and Judge Stephens testified that trial counsel raised the issue of witness intimidation and the issue was address before trial. (Id., pp. 43 and 72.) To the extent Petitioner faults trial counsel for making the simple request to "bring the Clerk down the hall" for further inquiry during pretrial motions hearing, such is without merit. The record clearly reveals that Petitioner's motion for change of venue was granted and Clerk Brooks was not present at the new venue location. Furthermore, Petitioner fails to indicate how Petitioner was prejudiced by counsel's failure to call Clerk Brooks as a witness during the pretrial conference.

Based upon a review of the record, the undersigned finds no indication that trial counsel was deficient in his failure to file a written motion regarding prosecutorial misconduct. The record

clearly reveals that trial counsel made an oral motion to dismiss based upon the Prosecutor's alleged intimidation of a witness. The Circuit Court conducted a pretrial motions hearing on the issue. Therefore, there is no indication that trial counsel acted unreasonably in failing to file a written motion or "doing more." Furthermore, there is no indication that Petitioner was prejudiced by trial counsel's alleged failure. The record supports that State *habeas* court's conclusion that the Prosecutor did not suborn or intimidate a witness. The record clearly reveals that neither the Prosecutor, nor Clerk Brooks, spoke to Witness Salyers prior to the underlying trial. Additionally, the record reveals that Witness Salyers was not intimidated by the alleged misconduct because Witness Salyers recanted his initial statement and testified favorable to Petitioner during the underlying trial. During closing arguments, trial counsel pointed the Clerk Brook's alleged misconduct in support of his argument that Witness Salyer only gave his initial statement incriminating the Petitioner due to the State's practice of intimidation. (Document No. 23-11, pp. 157-60.) Based upon the foregoing, the undersigned cannot find that the State court's application of <u>Strickland</u> was unreasonable under § 2254(d).

### v. **Expert Witness:**

In his Amended Petition, Petitioner complains that trial counsel was ineffective in failing to obtain an independent expert witness. (Document No. 20, pp. 9 – 10.) Petitioner explains that "despite the importance to the State of expert testimony as to the arson charge upon which the petitioner's felony murder charge was predicated, the record is devoid of any evidence that defense counsel attempted to secure an expert to independently examine the State's evidence or rebut the claims of the State's purported expert witnesses, and no *Daubert* challenge was made to the methodology used by the State's witnesses, nor that methodology's acceptance within the greater

33

scientific community." (Id.) In support, Petitioner notes that the State's expert retained for purposes of the State *habeas* proceedings opined differently than the expert retained by the State for purposes of the trial. (Id., p. 10.) Specifically, Petitioner states that the expert retained by the State for purposes of *habeas* proceedings expressed that he "did not believe that the experts who testified at trial did enough to rule out any possible accidental causes of the fire" and he "disagreed with [the purported experts at trial] that there were two points of origin." (Id.) Petitioner argues that the foregoing "is illustrative of the fact that had trial counsel made any attempt to secure an expert witness for the defense, or more vigorously attacked the credentials of the State's purported experts, a similarly favorable opinion might very well have been obtained." (Id.) Petitioner, however, complains that trial counsel allowed "the State, without challenge, to present the only remotely scientific evidence heard by the jury." (Id.) Petitioner further notes that his co-defendant, Tommy Owens, testified at the omnibus hearing that "had he been contacted by an investigator employed by trial counsel on the petitioner's behalf, he would have testified on petitioner's behalf." (Id., p. 11.)

In his Motion for Summary Judgment, Respondent argues that Petitioner cannot establish trial counsel acted ineffectively under the Strickland standard based upon his failure to obtain an arson expert, failure to challenge the State's arson expert, and failure to object to testimony regarding the victim's cause of death. (Document No. 37, pp. 13 - 15.) Respondent first contends that the record reveals that trial counsel called Raymond Griffith from Casto Investigations to testify as Plaintiff's arson expert. (Id., p. 13.) Respondent explains that trial counsel moved to admit Mr. Griffith "as an arson expert, and without no objection, the Circuit Court recognized Mr. Griffith as the arson expert." (Id.) Second, Respondent argues that the arson expert hired for *habeas*

purposes does not establish trial counsel ineffectiveness. (Id., p. 14.) Respondent explains that the *habeas* arson expert concluded that the State's experts did not do enough to rule out accidental causes but the expert did not view the crime scene. (Id.) The *habeas* expert also did not opine that it was not arson and "could not explain how [the victim's] motorized cart, which was kept next to the bed, had been moved a distance away from the bed." (Id.) Third, Respondent argues that nothing in the record indicates that trial counsel could have made a successful Daubert challenge regarding arson experts, James Domingo and Robert Bailey. (Id., p. 15.) Respondent further notes that trial counsel cross-examined the experts at length. (Id.) Finally, Respondent argues that the arson expert did not opine as to the victim's cause of death and therefore trial counsel did not act ineffectively by failing to object to such. (Id., pp. 15 – 16.)

      In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner generally argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision." (Document No. 40, p. 3.) Petitioner claims that the West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, but the West Virginia Supreme Court unreasonably concludes that trial counsel was effective. (Id., p. 4.)

      In Reply to Petitioner's Motion for Summary Judgment, Respondent argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary judgment, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent notes that Petitioner fails to specifically address the above claim in his Response and Motion for Summary

Judgment. (Id., pp. 2 – 3.)

Regarding Petitioner's above claim, the West Virginia Supreme Court concluded that trial

counsel did not act ineffectively regarding the hiring of an arson expert or in failing to object

testimony from the State's arson experts. (Document No. 23-5, p. 93.) In support the West Virginia

Supreme Court stated, in pertinent part, as follows:

> Petitioner's argument that Mr. Anderson failed to hire an arson expert is not
> supported by the record. During the evidentiary hearing, Mr. Anderson testified that
> he called Raymond Griffith Jr. from Casto Investigations to dispute the State Fire
> Marshall's opinion as to the cause of the fire. Petitioner also misconstrues the
> testimony offered by a State arson expert by claiming that the expert offered
> medical opinion testimony. Based upon our review of the portion of the trial
> transcript referenced by petitioner, we do not find that to be true. Instead, the expert
> offered testimony related to the charring, or lack thereof, of the victim's body,
> which goes to the origin of the fire.

(Id.)

The undersigned finds that there is no evidence that the State *habeas* Court's determination

on the above claim was contrary to, or an unreasonable application of, clearly established federal

law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the

State courts correctly referenced the Strickland standard as applicable law to Petitioner's

ineffective assistance of counsel claim. Petitioner, however, argues that the State Courts

unreasonably applied Strickland to the facts of his case. Considering what arguments or theories

supported, or could have supported the West Virginia Supreme Court's decision, the undersigned

finds that the Court's ruling was not "so lacking in justification that there was an error well

understood and comprehended in existing law beyond any possibility for fairminded

disagreement." A review of the record reveals that trial counsel presented Mr. Griffith from Casto

Investigations as Petitioner's arson expert during the underlying criminal trial. (Document No. 23-

10, p. 247.) Mr. Griffith testified that he was a special investigator with training in fire investigation and he had 29 years of experience with the Charleston Fire Department. (<u>Id.</u>, pp. 247 – 248.) Mr. Griffith further testified that he had been a fire investigator for the City of Charleston for 13 years, had attended the National Fire Academy, and taught seminars on arson. (<u>Id.</u>) Trial counsel moved for Mr. Griffith to be recognized as an arson expert and his motion was granted. (<u>Id.</u>, p. 248.) Mr. Griffith described his investigation of the scene and testified on Petitioner's behalf during the trial. (<u>Id.</u>, pp. 249-60.) Specifically, Mr. Griffith testified that he determined to the cause of the fire to be "undetermined" and that he "did not rule it was arson." (<u>Id.</u>, p. 260.) The record reveals that Mr. Griffith investigated the scene for an insurance company. (<u>Id.</u>, p. 261.) Mr. Griffith, however, explained that his investigation of the fire scene for the insurance company was the same as if he was doing an "arson investigation for the City of Charleston." (<u>Id.</u>) During the omnibus hearing, trial counsel testified that he did not "hire" an arson expert because he felt Mr. Griffith's determination that the cause of the fire was "undetermined" was sufficient. (Document No. 23-4, pp. 117-18.) Trial counsel explained that it was his strategy to show that the State could not prove that it was arson and if there was no arson, then there was no murder. (<u>Id.</u>, p. 133.) Trial counsel stated that part of his strategy was to argue that the victim was a smoker and could have accidentally started the fire. (<u>Id.</u>, p. 135.) Furthermore, trial counsel explained that when you "hire" an expert, it is possible that their opinion can be more supportive to the State's theory. (<u>Id.</u>, p. 134-35.) Trial counsel explained that he knew Mr. Griffith's opinion was favorable to Petitioner based upon the report prepared for the insurance company. (<u>Id.</u>)

To the extent Petitioner argues that the hiring of an expert would have resulted in a favorable opinion, such an allegation is speculative. Although an expert hired by the State for

Petitioner's State *habeas* proceedings rendered an opinion favorable for Petitioner, such does not indicate an expert hired at the time of Petitioner's criminal trial would have rendered a similar opinion. The record reveals that the *habeas* expert rendered his opinion based on the trial transcripts and arson evidence. The *habeas* expert determined that there was only one origin of the fire and that the prior experts did not do enough to rule out accidental causes. The *habeas* expert, however, did not have the benefit of viewing the fire scene. Additionally, the *habeas* expert could not explain how the victim's motorized cart, which was kept next to the bed, was moved a good distance away from the bed at the time of the fire. Even if Petitioner would have had the benefit of this expert at his criminal trial, there is no indication that the jury would have given more weight to his testimony resulting in a not guilty verdict. Based upon the foregoing, there is no indication that trial counsel acted ineffectively by failing to "hire" an arson expert. The undersigned, therefore, cannot find that the State Court's application of the <u>Strickland</u> standard was unreasonable concerning trial counsel's alleged failure to obtain an arson expert.

Next, undersigned will consider Petitioner's claim that the State *habeas* court unreasonably applied <u>Strickland</u> when it determined that trial counsel was not ineffective in failing to challenge the State's arson experts. The records reveals that the State called two arson experts: James Anthony Domingo and Robert D. Bailey, IV. (Document Nos. 23-9 and 23-10.) Mr. Domingo testified that he was an assistant state fire marshal and had held that position for 12 years. (Document No. 23-9, p. 145.) Mr. Domingo described his experience as being a volunteer fireman for 26 years, holding the position of lieutenant, being an assistant chief for 7 years, a fire prevention officer, and a training officer. (<u>Id.</u>) Mr. Domingo testified concerning his education, extensive training, and knowledge regarding arson issues. (<u>Id.</u>, pp. 145-46.) Mr. Bailey testified that his

experience included being a volunteer firefighter for 10 ½ years and working with the State Fire Marshal's Office for 2 ½ years. (Document No. 23-10, pp. 11 - 12.) Mr. Bailey testified concerning his extensive training and experience. (Id., pp. 12 – 13.) Rule 702 of the West Virginia Rules of Evidence requires that (1) the witness must be an expert, (2) the expert must testify to scientific, technical or specialized knowledge, and (3) the expert testimony must assist the trier of fact. In the instant case, there is no indication that Mr. Domingo and Mr. Bailey were improperly qualified as experts based upon their specialized knowledge. Under Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), scientific evidence is admissible only if it "rests on a reliable foundation and is relevant." A petitioner's *habeas* challenge based on Daubert fails where petitioner has not demonstrated that the challenged portion of an expert's testimony involved scientific knowledge. See Ward v. Seifert, 2014 WL 4929441, * 1 (S.D.W.Va. Sept. 30, 2014)(J. Cophenhaver)(citing Watson v. Inco Alloys Int'l, Inc., 209 W.Va. 234, 239, 545 S.E.2d 294, 299 (2001)("The question of admissibility under *Daubert* . . . only arises if it is first established that the testimony deals with 'scientific knowledge.' 'Scientific' implies a grounding in the methods and procedure of science while 'knowledge' connotes more than subjective belief or unsupported speculation.") In the instant case, Petitioner does not claim that Mr. Domingo or Mr. Bailey's testimony involved "scientific knowledge." Petitioner merely concludes trial counsel was ineffective in failing to make a Daubert challenge. Such conclusory allegations are insufficient. Thus, the undersigned cannot conclude that the State Court's application of the Strickland standard was unreasonable concerning to trial counsel's alleged failure to assert a Daubert challenge.

Finally, undersigned will consider Petitioner's claim that the State *habeas* court

unreasonably applied <u>Strickland</u> when it determined that trial counsel was not ineffective in failing

to object to the arson expert's testimony regarding the cause of death. The record reveals that Mr.

Domingo testified as follows:

> Q. What else can you tell us that you did in trying to determine the origin and cause of the fire that resulted in the death of Dr. Whitely?

> A. Did a lot of looking at the fire scene and spoke with the other investigators and then spoke with law enforcement as to some of their findings.

> Q. Did you also have the ability to communicate with the medical examiner who had done the autopsy concerning the type of injuries, the smoke inhalation, the other findings that the medical examiner made?

> A. I don't think I spoke with them, no.

> Q. Would someone from your office have done that?

> A. Usually they do.

> Q. Would it have been important in the total investigation to know what actually caused Dr. Whitley's death?

> A. Would it have been important? It would have been important yes, sir.

> Q. If the medical examiner found that Dr. Whitley was alive and breathing while the fire was burning and his death was attributed to smoke inhalation and the high level of $CO_2$ I believe is what he described within his blood, would that be consistent with your observations at the scene?

> A. Yes.

> Q. The fact that Dr. Whitley was not directly burned by flames from the fire - - according to the medical examiner, he was close to the fire and source of considerable heat and not actually - - his flesh was not actually burned by the flames themselves, would that have - - would that be a significant factor in your determination?

> A. Yes. Usually - - and I remember speaking to the other fire marshals that were there and the firemen that viewed the body as to the condition of the body because that's something important to me.

Q.    In fact you saw photographs of Dr. Whitley before his body was removed.

A.    I seen - -

Q.    You didn't see the photographs before he was removed. You saw the photographs that were taken before his body was removed?

A.    That's correct.

Q.    Did they substantiate what I represented to you, that he had heat burn or thermal burns on his body but his body was not actually charred or burned by the flames of the fire itself?

A.    Correct. Very well intact as well as some of the clothing he had on. Very well intact.

(Document No. 23-9, pp. 161-62.) Thus, there is no indication that Mr. Domingo opined as to the victim's cause of death. Mr. Domingo testified regarding his observations of the fire scene and the conditions of the victim's body. Mr. Domingo merely opined that the medical examiner's findings was consistent with his observations of the fire scene. Thus, trial counsel was not ineffective in failing to assert an objection to such testimony. Furthermore, there is no indication that trial counsel's failure object to the arson expert's alleged opinion that the victim died of smoke inhalation resulted in prejudice. The record clearly reveals that the medical expert testified that the victim died of smoke inhalation. Thus, Petitioner would not have been prejudiced if the arson expert would have rendered the same opinion. The undersigned, therefore, cannot conclude that the State Court's application of the Strickland standard was unreasonable concerning to trial counsel's alleged failure to object the Mr. Domingo's alleged testimony regarding the victim's cause of death.

Based upon the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly

established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

### vi.    Testimony by Co-Defendant.

In his Amended Petition, Petitioner complains that trial counsel was ineffective in failing to obtain the testimony of his co-defendant. (Document No. 20, p. 11.) In support, Petitioner states that his co-defendant "testified at the omnibus evidentiary hearing that had he been contacted by an investigator employed by trial counsel on the petitioner's behalf, he would have testified on petitioner's behalf." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner cannot establish trial counsel acted ineffectively under the Strickland standard based upon his failure to obtain the testimony from his co-defendant. (Document No. 37, p. 16.) Respondent notes that trial counsel attempted to obtain Petitioner's co-defendant's testimony but co-defendant's counsel prohibit trial counsel to make direct contact with the co-defendant. (Id.) Respondent argues that "the determination not to call the co-defendant, where the co-defendant's counsel forbids communication and it is possible that the co-defendant might implicate the defendant is a strategy determination, which should not be overturned using hindsight." (Id.)

In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner generally argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision." (Document No. 40, p. 3.) Petitioner claims that the

West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, but the West Virginia Supreme Court unreasonably concludes that trial counsel was effective. (Id., p. 4.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent notes that Petitioner fails to specifically address trial counsel's failure to call Petitioner's co-defendant as a witness in his Response and Motion for Summary Judgment. (Id., pp. 2 – 3.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court concluded that trial counsel did not act ineffectively regarding his failure to call Petitioner's co-defendant as a witness at trial. (Document No. 23-5, p. 93.) In support the West Virginia Supreme Court stated, in pertinent part, as follows:

> Petitioner also alleges that his trial counsel was ineffective because he failed to speak with or call Mr. Owens as a witness at trial. However, during the evidentiary hearing, Mr. Anderson testified that based on his prior experience with Mr. Owens' counsel, Mr. Anderson knew that Mr. Owens' counsel would not let him speak to Mr. Owens. Clearly, it is a reasonable strategic decision for an attorney to choose not to call a witness with no knowledge as to what the witness may say before the jury.

(Id.)

The undersigned finds that there is no evidence that the State *habeas* Court's determination on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the State court correctly referenced the Strickland standard as applicable law to Petitioner's ineffective

assistance of counsel claim. Petitioner, however, argues that the State court unreasonably applied Strickland to the facts of his case. Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." A review of the record reveals that trial counsel testified during the omnibus hearing that he spoke to the co-defendant's attorney, who advised trial counsel that he would not permit trial counsel to speak directly with the co-defendant. (Document No. 23-4, p. 118.) Without the benefit of knowing what Petitioner's co-defendant might testify to before the jury, trial counsel's strategic decision not to call Petitioner's co-defendant as a witness was not unreasonable. Trial counsel had legitimate and reasonable concern that Petitioner's co-defendant might have implicated Petitioner. The undersigned, therefore, cannot conclude that the State Court's application of the Strickland standard was unreasonable concerning to trial counsel's failure to call Petitioner's co-defendant as a witness at trial. Based upon the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

### *vii.    Overall failure of Trial Counsel:*

In his Amended Petition, Petitioner states that trial counsel acted ineffectively by failing to subject the State's case to adversarial testing. (Document No. 20, pp. 10 – 11.) Petitioner argues

that similar to <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) and

<u>Griffin v. Warden</u>, 970 F.2d 1355 (4th Cir. 1992), Petitioner's trial counsel did not communicate

with him adequately, did not sufficiently investigate the circumstances of the case, did not

interview or compel the attendance of witnesses, did not perform any meaningful discovery, and

failed to put the State's case to the test. (<u>Id.</u>) In support, Petitioner states that the "West Virginia

Supreme Court of Appeal originally raked counsel over the coals in the *Lively* opinion denying his

petition for appeal." (<u>Id.</u>, p. 12.) Petitioner concludes that "per *Griffin*, the petition has established

a reasonable probability that had his trial counsel adequately discharged his duties as a zealous

advocate, the result would have been different insofar as, at the very least, any confidence in the

fairness of the proceedings is fatally undermined." (<u>Id.</u>)

In his Motion for Summary Judgment, Respondent argues that Petitioner cannot establish

that <u>Kimmelman</u> and <u>Giffin</u> are analogous to this matter. (Document No. 37, pp. 17 - 18.) In his

Response and Motion for Summary Judgment, Petitioner fails to specifically address the above

issue. (Document No. 40.) Petitioner generally argues that "[t]he West Virginia Supreme Court of

Appeals was incorrect and unreasonable in its application of <u>Strickland</u> to Petitioner's appeal of

his state habeas corpus decision." (Document No. 40, p. 3.) Petitioner claims that the West Virginia

Supreme Court "repeatedly notes the deficiencies in the performance" of trial counsel, but the

West Virginia Supreme Court unreasonably concludes that trial counsel was effective. (<u>Id.</u>, p. 4.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent argues that "[w]hile

Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative

argument, that he be granted summary, Petitioner's pleading is no more than a response to

Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent notes that

Petitioner fails to specifically address trial counsel's failure to call Petitioner's co-defendant as a witness in his Response and Motion for Summary Judgment. (Id., pp. 2 – 3.)

In Kimmelman, trial counsel was determined to be ineffective based upon his failure to file a suppression motion. Id., 447 U.S. at 385, 106 S.Ct. at 2588. The Supreme Court determined that counsel's failure to file a suppression motion was not based upon strategic considerations, but was due to counsel's failure to conduct an investigation and engage in pretrial discovery. Id. Specifically, trial counsel was unaware of the "bedsheet" evidence because he had not engaged in discovery or conducted an investigation. Id. In Griffin, the Fourth Circuit determined trial counsel to be ineffective based upon counsel's failure to make some effort to contact alibi witnesses and secure their attendance at trial. Griffin, 970 F.2d at 158-60. The Fourth Circuit determined that trial counsel's belief that there was going to be a plea bargain was no justification for neglecting to discover alibi witnesses and disclosing those to the State. Id. The Fourth Circuit reasoned that trial counsel was ineffective because he did not talk to any alibi witnesses nor make some strategic decision not to call them as witnesses. Id. Unlike counsel in Kimmelman and Griffin, Petitioner's trial counsel engaged in pretrial discovery, hired an investigator, and interviewed witnesses. There is no indication that trial counsel's lack of investigation or belief that there would be a plea bargain resulted in counsel being surprised by evidence, failing to file a suppression motion, or failing to call an alibi witness. Accordingly, the undersigned finds that Petitioner's above claim is without merit.

### B.    Ineffective Appellate Counsel Based on Explicitly Noted Failures.

In his Amended Petition, Petitioner complains "[t]he West Virginia Supreme Court of Appeals erred in holding that appellate counsel was effective despite explicitly noted failures

which foreclosed multiple grounds for relief entirely." (Document No. 20, p. 13.) In support, Petitioner states that "[i]n its opinion denying the petitioner's direct appeal, the West Virginia Supreme Court of Appeals is uncharitable in its analysis of both trial and appellate counsel." (Id.) Petitioner alleges that the Supreme Court noted the following "lapses" by counsel: (1) "[T]here was no objection made by the Defendant at the time the deputy testified about the information given to him about seeing Mr. Owens at the White residence;" (2) "[T]here was [no] objection to Mr. Richie's testimony that Mr. Cline reported his statements to the police;" (3) "[T]here was no other record developed below by Defendant regarding the testimony of Deputy Blevins or the testimony of Mr. Ritchie violating the Confrontation Clause of the Sixth Amendment;" (4) "[T]he Brady issue was raised for the first time below in the post-trial motion;" (5) Failure "to raise the Brady issue in his Petition for Appeal;" (6) The "argument regarding the publishing of Mr. Salyer's statement to the jury was not made in the Defendant's Petition for Appeal, but was raised for the first time in his Appellant's Brief;" (7) Trial counsel's failure to raise the issue regarding the name of the confidential informant until post-trial motions; (8) Trial counsel's failure to raise a Confrontation Clause claim regarding the confidential informant; (9) Appellate counsel raised the Confrontation Clause claim regarding the confidential informant in his Petition for Appeal, but raised the Brady issue only in his Brief; and (10) Appellate counsel's failure to raise issues regarding witness intimidation and prosecutorial misconduct. (Id., pp. 13 – 15.) Petitioner contends that after noting "lapses" by appellate counsel, the Supreme Court conducted "a plain error review of the proceedings as to avoid undue delay and prolonging of the proceedings." (Id., p. 13.) Petitioner, however, argues that "it is difficult to credibly argue that the Court would not have benefited from a competently preserved and developed record below." (Id.) Petitioner states that

47

"[i]f original appellate counsel had raised these issues in the original petition, the Court would obviously have had the benefit of not only additional argument but unity and coherence in those arguments that were made, and would not have repeatedly found it necessary to understate a plain error review accompanied by a chiding analysis of counsel's performance, throwing deficiencies into stark relief." (Id., p. 15.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim must be "dismissed as a matter of law because Petitioner cannot demonstrate that the State court adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law." (Document No. 37, pp. 18 - 24.) Respondent contends that Petitioner cannot establish appellate counsel acted ineffectively under the Strickland standard. (Id.) Respondent notes that Petitioner merely quotes from the West Virginia Supreme Court's opinion where the Court notes counsel's failure to preserve certain issues. (Id.) Respondent contends that the West Virginia Supreme Court's opinion pointing out failures does not satisfies both prong of Strickland. (Id.) Further, Respondent asserts that Petitioner fails to allege how he was prejudiced by the noted failures of appellate counsel. (Id.) Respondent contends that Petitioner suffered no prejudice because the West Virginia Supreme Court reviewed the issues from a plain error analysis. (Id.)

In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner generally argues that "[t]he West Virginia Supreme Court of Appeals was incorrect and unreasonable in its application of Strickland to Petitioner's appeal of his state habeas corpus decision." (Document No. 40, p. 3.) Petitioner claims that the West Virginia Supreme Court "repeatedly notes the deficiencies in the performance" of appellate

counsel, then unreasonably concludes that appellate counsel was effective. (Id., p. 4.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Respondent notes that Petitioner fails to specifically address the alleged ineffectiveness by appellate counsel in his Response and Motion for Summary Judgment. (Id., pp. 2 – 3.)

Regarding Petitioner's above claim, the West Virginia Supreme Court concluded that appellate counsel did not act ineffectively. (Document No. 23-5, pp. 93 - 94.) Specifically, the West Virginia Supreme Court stated as follows (Id.):

> With regard to his appellate counsel, petitioner argues that the attorney who prepared his appeal petition failed to raise certain issues that his subsequent appellate counsel addressed in the appellate brief and during oral argument. He therefore, contends that if his original appellate counsel had raised those issues in the petition, this Court would have had the benefit of additional argument, rather than employing a plain error analysis.
>
> * * *
>
> As the final part of this assignment of error, petitioner alleges that he received ineffective assistance of counsel from his appellate counsel. In *Lively*, 226 W.Va. at 93-94, 697 S.E.2d at 129-30, we noted that appellate counsel failed to assign as error in the petition for appeal the State's failure to disclose allegedly exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83 (1963). In post-trial motions, counsel argued that the State failed to provide the name a confidential informant. *Lively*, 226 W.Va. at 93-94, 697 S.E.2d at 129-30. However, we also noted that there had been no assertion by petitioner that anything in the informant's statement would, in any way, tend to exculpate petitioner. *Id.* While we deemed the argument waived, given that the argument was not asserted in the petition for appeal, petitioner has failed to show that the assertion of the same in the petition for appeal would satisfy the second prong of the *Strickland/Miller* test. Therefore, we find that the circuit court did not err in finding that petitioner did not received ineffective assistance of counsel in his criminal proceeding or in this direct appeal.

The undersigned finds that there is no evidence that the State *habeas* Court's determination

on the above claim was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, Petitioner does not dispute that the State courts correctly referenced the Strickland standard as applicable law to Petitioner's ineffective assistance of counsel claim. Petitioner, however, argues that the State courts unreasonably applied Strickland to the facts of his case. Petitioner argues that the West Virginia Supreme Court unreasonably concluded in his *habeas* case that appellate counsel was effective after "repeatedly not[ing] the deficiencies in the performance" of counsel. Petitioner's argument, however, is misleading. A review of the record reveals that the West Virginia Supreme Court did not "repeatedly" note deficiencies in appellate counsel's performance in its decision denying Petitioner's *habeas* appeal. Petitioner bases his argument upon the West Virginia Supreme Court's decision denying Petitioner's direct appeal where it noted counsel's failure to preserve certain issues for appeal. Since the West Virginia Supreme Court noted "lapses" of appellate counsel in its decision denying Petitioner's direct appeal, Petitioner now concludes that the West Virginia Supreme Court's decision denying Petitioner's *habeas* claim based upon ineffective assistance of appellate counsel "defies comprehension of by any fairminded observer." Petitioner's conclusory claim that appellate counsel was ineffective based solely upon the "noted failure" referenced in the direct appeal decision, however, is insufficient. Clearly, the West Virginia Supreme Court was not addressing the issue of ineffective assistance of counsel in its decision regarding Petitioner's direct appeal. In its decision denying Petitioner's *habeas* appeal, the West Virginia Supreme Court specifically considered and rejected Petitioner's claim that appellate counsel was ineffective. Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." The record reveals that despite the noted failures of counsel to properly preserve or present certain issues on direct appeal, the West Virginia Supreme Court reviewed the issues on direct appeal from a plain error analysis and determined such to be without merit. (Id.) The West Virginia Supreme specifically stated that "the record in the instant case is fully developed, in that it reflect clearly the matters to which the Defendant now objects, as well as the specific testimony at issue." (Document No. 23-2, p. 107.) Thus, Petitioner fails to establish that there is a reasonable probability that, but for counsel's alleged errors, the results of the proceeding would have been different. Based upon the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

### C.    Witness Intimidation and Prosecutorial Misconduct:

In his Amended Petition, Petitioner complains the West Virginia Supreme Court of Appeals erred in holding that intimidation of a witness by an officer of the trial court, and the prosecuting attorney's suborning of that intimidation, did not rise to the level of a constitutional violation and deprive petitioner of due process. (Document No. 20, pp. 16 - 28.) In support, Petitioner argues that the Prosecutor improperly requested that Clerk Brooks make contact with a witness. (Id.) Petitioner argues that Clerk Brooks attempted to engage in an *ex parte* communication with a witness (Brain Salyers). (Id.) Petitioner explains that Clerk Brooks called

51

Witness Salyer's residence and spoke to Witness Salyers' girlfriend. (Id.) Petitioner contends that Clerk Brooks and the Prosecutors' conduct constituted intimidation of a witness. (Id.) Petitioner argues that Clerk Brooks "used his current status as circuit clerk and former status as sheriff not only to contact and admonish a witness's family but to actually interrogate with the intention of securing more information for purposes of which hardly require speculation." (Id.) Petitioner further complains that the trial court never inquired of Clerk Brooks concerning his attempted communication with Witness Salyers. (Id.) Petitioner contends that "[t]he circuit clerk's actions are inexcusable and utterly undermine any confidence in the system." (Id., p. 26.) Petitioner further argues that the Prosecutor's request that the Clerk Brooks make contact with the witness "constitutes grave prosecutorial misconduct, at best a lapse in judgment rather than a deliberate abuse of power." (Id., p. 27.) Petitioner states that it is "surprising and troubling that [Prosecutor] Bell considered it permissible to discuss the conduct and strategy of a pending murder case with the circuit clerk, but it boggles the mind that [Prosecutor] Bell actually asked the circuit clerk to run errands and speak on his behalf, and that the circuit clerk did so." (Id., p. 28.) Petitioner concludes that "[t]his constitutes outrageously unprofessional and unethical misconduct that unavoidably affected the petitioner's due process rights, voiding any claims that petitioner received a fair trial." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim must be "dismissed as a matter of law because Petitioner cannot demonstrate that the State court adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law." (Document No. 37, pp. 24 - 27.) Respondent contends that when considering the foregoing allegations of witness intimidation and prosecutorial misconduct "this

Court need not go as far as determining whether there was any error." (<u>Id.</u>, p. 24.) Respondent states that "even if this Court were to assume error, it is plain that any error was harmless as it is clear beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (<u>Id.</u>) Respondent explains that although Petitioner contends that Clerk Books and the Prosecutor acted improperly in intimidating Witness Salyers, the record reveals that Witness Salyers actually testified on Petitioner's behalf. (<u>Id.</u>) Respondent, therefore, claims that the alleged error did not contribute to the verdict obtained. (<u>Id.</u>)

In his Response and Motion for Summary Judgment, Petitioner "reiterates that the unethical and unconscionable behavior of the Prosecuting Attorney and the Circuit Clerk are not only relevant to the issue of witness interference and intimidation, but are an indication of the impropriety of the proceedings against the Petitioner from start to finish." (Document No. 40, p. 4.) Petitioner contends that a "runaway prosecutor and a loose cannon employee of the Court" tampered with a witness and his family by making "veiled threat regarding recantation." (<u>Id.</u>, pp. 4 – 5.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent first argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Second, Respondent contends that "the key fact is that the witness testified on Petitioner's behalf" and "[e]ven if error occurred, such error was harmless." (<u>Id.</u>, p. 3.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court concluded that "[w]hile petitioner contends that the issue rises to the level of a constitutional issue, we do not

agree." (Document No. 23-5, pp. 89 - 90.)

The "right to due process guarantees the right to a fair opportunity to defend against the State's accusations . . .." United States v. Jinwright, 683 F.3d 471, 482-83 (4th Cir. 2012)(internal quotations omitted). The United States Supreme Court has recognized that intimidation of a defense witness to the extent that the witness is "driven from the witness stand" deprives a defendant of due process of law. Webb v. Texas, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). The Fourth Circuit has explained that "[i]mproper intimidation of a witness may violate a defendant's due process right to present his defense witnesses freely if the intimidation amounts to 'substantial government interference with a defense witness' free and unhampered choice to testify." United States v. Saunders, 943 F.2d 388, 392 (4th Cir. Aug. 15, 1991)(citations omitted). If a defendant "is able to establish a substantial government interference, the inquiry moves to the question of whether it was prejudicial or harmless error." Id. (citing United States v. Teague, 737 F.2d 378, 384 (4th Cir. 1984)). With respect to claims of prosecutorial misconduct, the test is "whether the [misconduct] so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181, 106 S.Ct. 2464, 2471-72, 91 L.Ed.2d 144 (1986)(quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871-72, 40 L.Ed.2d 431 (1974).). The fact that the prosecutor's conduct or comments are "undesirable or even universally condemned" is insufficient to establish a due process violation. Id. The defendant must show (1) "that the prosecutor's remarks or conduct were improper" and (2) "that such remarks or conduct prejudicially affected his substantial rights so as to deprive him of a fair trial." United States v. Scheetz, 293 F.3d 175, 185 (4th Cir. 2002); also see United States v. Caro, 597 F.3d 608, 624-25 (4th Cir. 2010).

Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." First, a review of the record reveals that the Prosecutor did not suborn or intimidate a witness. (Document No. 23-4, pp. 32 – 44, 52 – 54.) During the omnibus hearing, the Prosecutor stated that he was having difficulty reaching Witness Salyers. (Id., p. 32.) The Prosecutor explained that Witness Salyers had given a tape-recorded statement to police officers during the underlying investigation, which incriminated Petitioner and the co-defendant. (Id., pp. 33 - 34.) The Prosecutor, however, testified that he had not met with Witness Salyers and Witness Salyers was not responding to his telephone calls. (Id., p. 34.) The Prosecutor stated that although he was not yet aware that Witness Salyers was recanting his prior statement, he was suspicious due to Witness Salyers' lack of contact. (Id., pp. 34 – 35.) During a conversation with Clerk Brooks, the Prosecutor mentioned his difficulty contacting Witness Salyers. (Id., pp. 16, 36 - 37.) The Prosecutor explained that Clerk Brooks "told me that he was acquainted with Mr. Salyers' mother and the family, and that he would attempt to contact them, or him, and ask him to come in and meet with me." (Id.) The Prosecutor stated that he asked Clerk Brooks to make contact as a "friend" of the Salyers' family and not as his official capacity as the Circuit Clerk. (Id., p. 53.) The Prosecutor explained that he had known Clerk Brooks for years because Clerk Brooks was the former Sheriff and a preacher. (Id., pp. 35 -37.) The record reveals that Clerk Brooks called Witness Salyers' residence and spoke to Ms. Prater, who was Witness Salyers' girlfriend. (Id., pp. 20, 39.) Ms. Prater testified that Clerk Brooks inquired as to whether Witness Salyers was changing his statement and advised Ms. Prater that it would cause "problems"

if Witness Salyers testified falsely. (Id., pp. 81 – 84.) The Prosecutor, however, testified that he only requested that Clerk Brooks to ask Witness Salyers "to come in and take with me or arrange for me to meet with Brian Salyers to talk with him before trial." (Id., p. 39.) The Prosecutor stated that he never intended for Clerk Brooks to express any concern regarding testifying falsely. (Id., p. 40.) Even assuming the Prosecutor's conduct to be "improper," there is no indication that the Prosecutor's conduct prejudicially affected Petitioner's substantial rights so as to deprive Petitioner of a fair trial. The record clearly reveals that despite the Prosecutor's alleged misconduct, Witness Salyers was present at Petitioner's underlying criminal trial and testified favorably to Petitioner. Accordingly, the undersigned finds Petitioner's allegations of prosecutorial misconduct to be without merit.

Next, the undersigned will consider Petitioner's claim of witness intimidation. A review of the record reveals that there was no "substantial government interference with a defense witness' free and unhampered choice to testify." Although the record reveals that the Prosecutor requested Clerk Brooks to make contact with Witness Salyers, Clerk Brooks was unable to engage in direct communication with Witness Salyers. (Document No. 23-4, pp. 39, 81, 84.) Clerk Brooks attempted to contact Witness Salyers on two occasions by calling Witness Salyers' residence. (Id., pp. 20, 39.) On both attempts, Clerk Brooks spoke only to Witness Salyers' girlfriend (Ms. Prater). (Id., pp. 20, 81, 83.) Ms. Prater explained that Witness Salyers came home during the second phone call conversation and she put the call on speaker phone. (Id., pp. 80 – 84.) Ms. Prater, however, confirmed that Witness Salyers only listened and never participated in the conversation. (Id.) Ms. Prater testified that Clerk Brooks inquired as to whether Witness Salyers was changing his statement and advised Ms. Prater that it would cause "problems" if Witness Salyers testified

falsely. (Id., pp. 81 – 84.) Although Ms. Prater stated that she felt intimidated by the call, she confirmed that Clerk Brooks never made any type of threat during the conversation. (Id.) Ms. Prater further stated that she was unaware of Clerk Brook's employment as the Circuit Clerk. (Id., p. 81.) Clerk Brooks explained that he made the call to Witness Salyers' residence from his home phone acting in his personal capacity and not as an officer of the court. (Id., p. 25.) Finally, Witness Salyers testified that despite the foregoing, he testified during Petitioner's criminal trial consistent with the recanting statement he had provided to Petitioner's investigator. (Id., p. 101.) Thus, the undersigned finds there was no indication of "substantial government interference with a defense witness' free and unhampered choice to testify." Even assuming substantial government interference occurred, the actions of Clerk Brooks and the Prosecutor were harmless because Petitioner suffered no prejudice as Witness Salyers testified favorably to Petitioner during the underlying criminal trial. See United States v. Teague, 737 F.2d 378, 382-84 (4th Cir. 1984)(finding the action of the AUSA to be harmless where defendant suffered no prejudice because the defense witness testified as favorably as the defendant could have expected).

Based upon the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted and Petitioner's Motion for Summary Judgment be denied as to Petitioner's above claim of ineffective assistance of counsel.

D.    **Brady Violation:**

In his Amended Petition, Petitioner complains the "West Virginia Supreme Court of

Appeals erred in holding that the prosecuting attorney's refusal to disclose the identity of an informant was not a breach of his affirmative duties under <u>Brady v. Maryland</u>." (Document No. 20, pp. 28 - 29.) In support, Petitioner argues that the "prosecuting attorney either misunderstood or ignored his obligation under <u>Brady</u>." (<u>Id.</u>, p. 28.) Petitioner contends that "[i]t is disingenuous to claim that the informant's identity was unimportant to the defense or lacked potential probative or exculpatory value – one may easily imagine the exculpatory value of this mystery informant turned out to be a person bearing personal animus against the petitioner, or against the alleged victim or if the informant turned out not to exist at all, rendering some portion of law enforcement's cause for investigation pretextual." (<u>Id.</u>, p. 29.) Therefore, Petitioner concludes that the Prosecutor "had an affirmative duty to disclose the identity of the confidential informant to the defense, notwithstanding the defense's dereliction in not requesting it or otherwise developing the record regarding the issue." (<u>Id.</u>, p. 29.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim must be "dismissed as a matter of law because Petitioner cannot demonstrate that the State court adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law." (Document No. 37, pp. 27 - 28.) Respondent contends that there was no <u>Brady</u> violation because the name of the confidential informant was not exculpatory. (<u>Id.</u>, p. 27.) Respondent explains that the confidential informant stated that he saw the co-defendant (Mr. Owens) near the victim's home. (<u>Id.</u>) Respondent states that the confidential informant "gave absolutely no information regarding Petitioner." (<u>Id.</u>) Therefore, Respondent contends that the confidential informant's name was not evidence favorable to the accused and was not material to either guilty or punishment. (<u>Id.</u>)

In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner, however, states that he "incorporates, by reference, the factual basis, procedural history, standard of review, and all arguments stated or raised in his previous Petition [and] Memorandum in Support." (Id., p. 1.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent first argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Second, Respondent notes that Petitioner fails to specifically address the Brady issue in his Response and Motion for Summary Judgment. (Id., p. 2.)

Regarding Petitioner's *Brady* claim, the West Virginia Supreme Court considered and denied his claim in both Petitioner's direct appeal and *habeas* appeal. In the direct appeal, the West Virginia Supreme Court addressed the claim as follows:

> . . . There has been no assertion at any time by the Defendant that anything in the informant's statement would in any way tend to exculpate the Defendant. * * * The deputy testified that the information provided by the confidential informant related solely to the possible presence of Mr. Owens at the scene and possibly to a vehicle at the scene the morning of the fire. More importantly, as previously discussed, the information provided to the police by the confidential informant included nothing regarding the Defendant. Thus, the Court concludes that the record is sufficient to conduct a plain error analysis; and determines that even had the Defendant raised the alleged *Brady* issue in a timely manner, the failure to provide the identity of the confidential informant did not constitute error.

(Document No. 23-2, pp. 110-11.) In his *habeas* appeal, the West Virginia Supreme Court stated as follows:

> With regard to petitioner's contention that the State failed to disclose exculpatory information, namely the name of the alleged confidential informant, we have previously held the following:

> There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *State v. Hatfield*, 169 W.Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defendant at trial.

Syl. Pt. 2, *State v. Youngblood*, 221 W.Va. 20, 650 S.E.2d 119 (2007). Petitioner fails to show or even allege that the name of the informant or the informant's possible testimony would have been favorable to petitioner as exculpatory or impeachment evidence. Because he has not satisfied the first prong of this test, we need not consider the other prongs. Therefore, we find that the habeas court did not error in denying petitioner's requested relief on these grounds.

(Document No. 23-5, pp. 90 - 91.)

It is well established that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97, 10 L.Ed.2d 215 (1963). In United States v. Agurs, 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976), the Supreme Court clarified the prosecutor's duty to require disclosure of favorable evidence to the defense, even if not requested. This duty encompasses impeachment evidence, exculpatory evidence, and evidence "known only to police investigators and not to the prosecutor." Kyles v. Whitley, 514 U.S. 419, 438, 115 S.Ct. 1555, 1567-68, 131 L.Ed.2d 490 (1995). A prosecutor, however, does not have a "constitutional duty routinely to deliver his entire file to defense counsel." United States v. Agurs, 427 U.S. 97, 111, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342 (1976). If the prosecution suppresses Brady material, the disclosure of which would have in all reasonable probability resulted in a different outcome, then the mandates of due process are violated. See United States v. Bagley, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985); Brady v. Maryland, 373 U.S. at 87, 83 S.Ct. at 1196-97. To state a

valid <u>Brady</u> claim therefore, the evidence "must be favorable to the accused, either because it is exculpatory, or because it is impeaching, [the] evidence must have been suppressed by the State, either willfully or inadvertently," and the evidence must have been material to the verdict such that its suppression prejudiced the defense. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 1948, 144 L.Ed.2d 286 (1999); <u>Monroe v. Angelone</u>, 323 F.3d 286, 299-300 (4th Cir. 2003). Suppressed evidence is "information which had been known to the prosecution but unknown to the defense." <u>Agurs</u>, 427 U.S. at 103, 96 S.Ct. 2392. Undisclosed exculpatory or impeachment evidence is material if there is "a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." <u>Kyles</u>, 514 U.S. at 434, 115 S.Ct. at 1566. A "reasonably probability" is shown when the suppression of evidence "undermines confidence in the outcome of the trial." <u>Id.</u> at 435, 115 S.Ct. at 1566. The question of materiality must be considered "collectively, not item by item." <u>Id.</u> at 436, 115 S.Ct. at 1567.

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* Court's determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. As stated above, the State *habeas* court determined that confidential informant's identity did not constitute exculpatory evidence or impeachment evidence. Petitioner has failed to present any evidence indicating how the identity of the confidential informant was impeaching or exculpatory evidence. Considering what arguments or theories supported, or could have supported the West Virginia Supreme Court's decision, the undersigned finds that the Court's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." The record reveals that the confidential

61

informant only provided a description of a pickup truck and stated that he saw Tommy Owens near the victim's residence on the morning of the fire. (Document No. 23-4, p. 51 and Document No. 23-10, pp. 121-22.) The confidential informant's statement only led officers to question Mr. Owens, who in turn stated he was with Mr. Salyers on the date of the fire. (Id.) The record is void of any indication that the confidential informant provided any information regarding Petitioner. Although Petitioner complains that the State improperly withheld the identity of the confidential informant, Petitioner fails to state how the confidential informant's identity constituted favorable exculpatory or impeaching evidence. There is no reasonable probability that the disclosure of the confidential informant's identity would have in all reasonable probability resulted in a different outcome in Petitioner's criminal proceedings. Furthermore, there is no indication that the confidential informant's identity was material to the verdict such that the suppression of the informant's identity prejudiced the defense. Based on the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts. Accordingly, the undersigned respectfully recommends that Respondent's Motion for Summary Judgment be granted Petitioner's Motion for Summary Judgment be denied as to the above claim.

      **E.**    **Trial Judge's Failure to Recuse:**

In his Amended Petition, Petitioner complains the "West Virginia Supreme Court of Appeals erred in holding that the failure of the trial judge to recuse himself from the proceedings, despite his longstanding personal and political relationships with the alleged victim, did not deprive the petitioner of due process." (Document No. 20, pp. 29 - 36.) In support, Petitioner argues

that the victim was "well-known to the presiding judge, the Honorable Booker T. Stephens." (Id., pp. 29 – 30.) Petitioner explains that the victim was "a long-time figure of great influence in McDowell County politics." (Id., p. 30.) Petitioner states that the victim's "party ties included stints as a State Delegate, the president of the McDowell County Commission, a member of the McDowell County Board of Education, the chair of the McDowell County Democratic Party." (Id.) Petitioner argues that "upon information and belief, [the victim] was a regular campaign contributor and political advocate on behalf of Judge Stephens, a Democrat." (Id.) Petitioner complains that although the victim was a "friend" of Judge Stephens, "Judge Stephens specifically requested that he retain the case upon its change of venue to Putnam County." (Id., p. 31.) Petitioner contends that "[n]ot only failing to voluntarily recuse himself, but requesting that one retain a criminal case involving the alleged murder of a friend and close political associate, along with failure to disclose this relationship on the record, not only establishes an impermissible appearance of possible impropriety and bias but is improper, with or without actual bias." (Id.) Petitioner notes that Judge Stephens lack of concern regarding the conduct of Clerk Brooks exhibits prejudice by Judge Stephens. (Id., pp. 33 - 35.) Petitioner further contends that prejudice is exhibited by Justice Kethcum's dissent in the *Lively* opinion, where he notes that Judge Stephens allowed Rule 404(b) testimony from 14 witnesses.[6] (Id., p. 35.) Therefore, Petitioner argues that "regardless of any actual bias on the part of Judge Stephens, justified or unjustified doubt is cast

---

[6] Although Petitioner does not assert a federal *habeas* claim based upon the improper admission of Rule 404(b) evidence, Petitioner does claim that the improper admission of Rule 404(b) evidence exhibits Judge Stephens' bias towards Petitioner. Petitioner indicates that the trial court improperly allowed fourteen witnesses to testify regarding Rule 404(b) evidence. The undersigned finds it important to note that the trial court did not allowed fourteen witnesses to simply repeat the same testimony. The record reveals that the State presented these witnesses to fully describe Petitioner's involvement in the prior crimes.

63

on the rulings Judge Stephens made during trial." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim must be "dismissed as a matter of law because Petitioner cannot demonstrate that the State court adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law." (Document No. 37, pp. 28 - 31.) Respondent contends that Judge Stephens "did not have a direct, personal, substantial or pecuniary interest in the case and had no conflict." (Id., p. 28.) Respondent notes that Judge Stephens only knew the victim "as a person and in politics, as a member of the same party," was "not aware of any campaign contributions made by the [victim] to his campaigns over the years," and had "never served on any boards, committees, or other bodies with him." (Id., p. 29.) Respondent argues that Petitioner "seeks to have this Court presume the existence of bias despite the showing in the record that no bias existed." (Id.) Respondent notes that even though Petitioner's co-defendant received a change of venue, Judge Stephens continued to act as the trial judge and Petitioner's co-defendant was acquitted. (Id.) Respondent contends that Judge Stephens was not required to recuse himself merely because he knew the victim, which is a common occurrence in small counties. (Id.) Next, Respondent notes that Justice Ketchum did not indicate in his dissent that Judge Stephens should have recused himself. (Id., p. 30.) Respondent explains that in Justice Ketchum's dissent, he merely noted his dislike for Rule 404(b) evidence. (Id.) Finally, Respondent notes that Judge Stephen's action of only admonishing the Prosecutor and Clerk Brooks regarding their attempted contact with Witness Salyers does not show bias. (Id.) Respondent argues that dismissing the matter entirely based upon the Prosecutor and Clerk Brooks' attempted contact with Witness Salyers "would have been an extreme remedy where Mr. Salyers actually testified on Petitioner's behalf." (Id.) Therefore,

Respondent concludes that "[t]here is nothing about the State Court decision, as to Petitioner's claim that the judge should have recused himself, that is contrary to or an unreasonable application of clearly established federal law." (Id., p. 31.)

In his Response and Motion for Summary Judgment, Petitioner "reiterates that a West Virginia Supreme Court case specifically addressing an underlying matter in West Virginia, *Caperton v. A.T. Massey Coal Co., Inc.*, 129 S.Ct. 2252 (2009), states unequivocally that the mere appearance of impropriety in a relationship between a judge and a party can constitute a due process violation." (Document No. 40, p. 5.) Thus, Petitioner argues that "a judge's own opinion is not reliable, much less dispositive." (Id.) Petitioner notes that "[a] judge may sincerely believe himself to be free of bias but, per *Caperton*, work under circumstances that give an inescapable appearance of impropriety." (Id.) Petitioner further alleges that the "victim was not just 'someone the judge knew in a small county,' he was a political figure of such stature in the local Democratic Party that an entire episode of a televised network program about his death was produced and aired nationally." (Id., pp. 5 – 6.) Petitioner complains that although he "it was acknowledged that [he] could not receive a fair trial in his home county, Judge Stephens apparently believed that there could still be a fair trial by the alleged victim's friend, the home judge." (Id., p. 6.) Petitioner states "[t]his is a perverse, incoherent position, as demonstrated in the record by not only the judge's lack of concern over the actions of the Prosecuting Attorney and the Clerk of the Court, nor by his allowance of an entirely irregular number of 404(b) witnesses, but his taking into consideration, as a factor in the Petitioner's life sentence, the alleged victim's daughter's pleas specifically reminding Judge Stephens of his friendship with her father." (Id.) Petitioner concludes it was "improper to hold the trial before Judge Stephens, whether or not he personally felt it proper." (Id.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent first argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 5.) Next, Respondent argues that the "*Caperton* Court noted that 'most matters relating to judicial disqualification [do] not rise to a constitutional level." (Id., p. 3.) Respondent argues that "there is no evidence of actual bias and it is clear that Judge Stephens had neither a financial interest in the outcome of the case nor a conflict arising from his participation at an earlier proceeding." (Id, p. 4.) Respondent asserts that this Court "should rejected Petitioner's suggestion that bias be presumed because the judge knew the victim." (Id.)

Regarding Petitioner's above *habeas* claim, the West Virginia Supreme Court addressed the issue, in pertinent part, as follows:

> . . . The trial judge testified at the evidentiary hearing and admitted that he did not disclose his relationship with Dr. Whitley on the record. Citing *Caperton v. A.T. Massey Coal Co., Inc.*, 556 U.S. 868 (2009), petitioner argues that the trial judge's failure to voluntarily recuse himself, along with his failure to disclose his relationship with Dr. Whitley on the record, establishes an impermissible appearance of possible impropriety and bias petitioner contends that these failures are also improper, with or without actual bias.
>
> The facts in *Caperton* are easily distinguishable from those in the instant case. The issue in *Caperton* related to an alleged relationship with a litigant, while the issue before this Court is the alleged relationship between a trial judge and a deceased victim in a criminal matter. *Id.* Unlike in *Caperton*, if the trial judge in the instant case received campaign contributions from Dr. Whitely, there could be no allegation that Dr. Whitley could gain any advantage from favorable ruling from the trial judge in the proceeding below. It should also be noted that petitioner's codefendant, Mr. Owens, was tried and acquitted in a separate trial presided over by the same trial judge. Further, petitioner ignores the fact that the trial judge testified during the habeas proceedings that he "had as much respect from [Dr.] Whitley and Kathy Lively as anyone could have, and they both respected [him]." Kathy Lively is petitioner's mother who was a longtime employee of Dr. Whitley. Petitioner's argument is based, in part, on Dr. Whitley's prominence in the

community and in the Democratic party in McDowell County, so it is difficult to reconcile that argument with his complaint that any relationship between the trial judge and the victim was not disclosed "on the record." If petitioner suspected that there was any bias or impropriety, he could have made a motion for recusal of the trial court judge. However, he failed to do so until after he had been convicted by a jury of his peers. Petitioner has failed to identify any evidence of actual prejudice or bias on the part of the trial judge's decision to serve as the trial judge, instead making speculative arguments. While petitioner need not present proof of actual bias, the question is "whether, 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented." *Id.* at 870(quoting *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Based on the record before this Court in the matter, we find that the trial judge in the instant case did not err in failing to voluntary recuse himself in the underlying criminal matter.

(Document No. 23-5, pp. 91 - 92.)

It is well recognized that "[a] fair trial in a fair tribunal is a basic requirement of due process. In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 99 L.Ed. 942 (1995). The United States Supreme Court, however, has recognized that "most matters relating to judicial disqualification [do] not rise to a constitutional level." Federal Trade Commission v. Cement Institute, 333 U.S. 683, 702, 68 S.Ct. 793, 92 L.Ed. 1010 (1948). The Supreme Court, however, explains that "the Due Process Clause has been implemented by objective standards that do not require proof of actual bias." Caperton v. A.T. Massey Coal Co., Inc., 556 U.S. 868, 883, 129 S.Ct. 2252, 2263, 173 L.Ed.2d 1208 (2009). Even when a judge does not have any direct, personal, substantial, pecuniary interest in a case requiring his disqualification at common law, there are circumstances in which the probability of actual bias on the part of the judgment that is too high to be constitutionally tolerable. Id. The Supreme Court determined the appropriate test is "whether 'under a realistic appraisal of psychological tendencies and human weakness,' the interest 'poses such a risk of actual bias or prejudgment that the practice must be forbidden.'" Id., 556 U.S. at

67

883-84, 129 S.Ct. at 2263; also see Williams v. Pennsylvania, ___ U.S. ___, 136 S.Ct. 1899, 195 L.Ed.2d 132 (2016)(citing Caperton, 556 U.S. at 881, 129 S.Ct. at 2252)("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, "the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'")

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* Court's determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. First, the undersigned agrees that the facts in Caperton are easily distinguishable from those in the instant case. Unlike Caperton, the political contributions involved in Petitioner's case were made by a deceased victim – not a party to the case. In Caperton, the defendant company's chairman (Blankenship) contributed a substantial amount in efforts help Justice Benjamin win the election knowing the defendant company was appealing its case to the West Virginia Supreme Court. In the underlying case, Petitioner alleges that the deceased victim was a prior contributor to Judge Stephen's campaign for Circuit Judge. The Supreme Court, however, has recognized that "[n]ot every campaign contribution by a litigant or attorney creates a probability of bias that requires a judge's recusal, but this is an exceptional case." Caperton, 556 U.S. at 884, 129 S.Ct. at 2263(noting that Blankenship contributed $3 million, which "eclipsed the total amount spent by all other Benjamin supporters and exceeded by 300% the amount spent by Benjamin's campaign committee"). Considering the facts of the instant case, the undersigned cannot find that the possibility[7] of receiving prior political contributions from a deceased victim posed such a risk of

---

[7]  During the omnibus hearing, Judge Stephens testified that he did not know if he ever received

actual bias or prejudgment that Judge Stephens should have recused himself.

Next, Petitioner argues that Judge Stephens should have recused himself because of his "longstanding personal and political relationships with the alleged victim." The undersigned will therefore consider whether an average judge in Judge Stephen's position was likely to be neutral, or whether there was an unconstitutional potential for bias. During the omnibus hearing, Judge Stephens testified that he knew the victim "as a person and I know him in politics." (Document No. 23-4, p. 66.) Although both the victim and Judge Stephens were Democrats, Judge Stephens explained that he never "served with [the victim] on any boards, committees, or any other bodies." (Id., p. 68.) Judge Stephens verified that he would characterize the victim as a "friend." (Id.) Judge Stephens further explained that he had a "friendship" with Petitioner's mother, Kathy Lively. (Id., pp. 70 – 71.) Judge Stephens stated that he "has as much respect for [the victim] and Kathy Lively as anyone could have, and they both respected me." (Id., p. 71.) Although Petitioner argues that he did not receive a fair trial because of bias by Judge Stephens, the record reveals that Judge Stephens acted as the trial judge for Petitioner's co-defendant who was acquitted. Finally, Petitioner's allegation that Justice Ketchum noted bias by Judge Stephens in his dissenting opinion in Lively is without merit. Although Justice Ketchum noted his disagreement with the admission of Rule 404(b) evidence, there is no indication that Justice Kethcum considered Judge Stephens to be biased.[8] (Document No. 23-2, pp. 127-34.) Thus, the undersigned cannot find that the Judge

---

campaign contributions from the victim. (Document No. 23-4, p. 67.)

[8]    Justice Ketchum noted his general disagreement with the admission of Rule 404(b) evidence. Specifically, Justice Ketchum stated as follows: "I pine for the days when prosecutors had the skills to prosecute the defendant on the issue of his/her guilt. Since the academics convinced courts to adopt the toxic evidentiary rule known as 404(b), defendants are no longer tried solely for their guilt or innocence." (Document No. 23-2, p. 127.)

Stephen's "longstanding personal and political relationship" with the victim posed such a risk of

actual bias or prejudgment resulting in a due process violation. Based on the foregoing, the

undersigned finds that the State *habeas* Court's determination on the above claim was not contrary

to, or an unreasonable application of, clearly established federal law; or based on an unreasonable

determination of the facts.[9] Accordingly, the undersigned respectfully recommends that

---

[9] Although Petitioner does not assert a stand alone federal *habeas* claim based upon the improper admission of Rule 404(b) evidence, the undersigned will briefly address the issue. Rule 404(b) of the West Virginia Rules of Evidence prohibits the introduction of evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he or she acted in conformity therewith. A party, however, may use such evidence for other purposes, such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. Generally, federal *habeas* relief is available with respect to a trial court's evidentiary rulings, only if the ruling denied the defendant the right to a fair trial. *Barbe v. McBride*, 521 F.3d 443, 452 (4th Cir. 2008); *also see Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973). "[T]he Due Process Clause does not permit the federal courts to engage in a finely tuned review of the wisdom of state evidentiary rules." *Marshall v. Lonberger*, 459 U.S. 422, 438, n. 6, 103 S.Ct. 843, 853, n. 6, 74 L.Ed.2d 646 (1983). The proper inquiry for the Court is whether the admission of the evidence itself so infected the entire trial that the resulting conviction violates due process. *See Estelle*, 502 U.S. at 72, 112 S.Ct. at 482.

Based upon a review of the record, the undersigned cannot conclude that the State *habeas* Court's determination on Rule 404(b) issue was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. The State *habeas* Court determined that the trial court properly admitted the Rule 404(b) evidence for purposes of showing common scheme or plan. The record further reveals that the trial court conducted a hearing prior to the admission of the Rule 404(b) evidence (Document No. 23-6, pp. 67 – 183.) The trial court determined that prior bad acts or crime had occurred and were permissible Rule 404(b) evidence. Specifically, the trial court first determined as follows: (1) the evidence involving the stolen laptop was admissible for the purpose of showing motive, plan, and intent (*Id.*, pp. 72 - 103.); (2) the evidence involving Petitioner and Mr. Owens' attack upon two individuals was admissible to show common scheme or plan of Petitioner and Mr. Owens to act in concert with another to carry out crimes of violence (*Id.*, pp. 103 - 144.); and (3) the evidence regarding Petitioner and Mr. Owens' attempt to commit arson of a building by using beer bottles filled with kerosene, gas, or other fuel was admissible for the purpose of showing a common scheme or plan by Petitioner and Mr. Owens to act in concert with another to carry out crimes of violence (*Id.*, pp. 144 - 177.) Prior to the Rule 404(b) testimony, the trial court gave a limiting jury instruction. During the final jury instructions, the trial court again gave the jury the limiting instruction regarding the Rule 404(b) evidence, which the jury is presumed to have followed. (Document No. 23-11, p. 123.) Thus, Petitioner cannot establish how he unduly prejudiced by the

Respondent's Motion for Summary Judgment be granted Petitioner's Motion for Summary Judgment be denied as to the above claim.

### F.    Violation of Confrontation Clause:

In his Amended Petition, Petitioner complains the "West Virginia Supreme Court of Appeals erred in holding that the admission into evidence of testimony regarding the statement of an unidentified, unavailable informant was not a violation of the Confrontation Clause. (Document No. 20, pp. 37 - 38.) Petitioner argues his right to confrontation was violated when Deputy Blevins testified "regarding the testimony of the proverbial unidentified, unavailable informant who supposedly placed the petitioner's co-defendant in Mr. Salyers' truck on the morning of the fire."

---

admission of Rule 404(b) evidence so as to render Petitioner's trial fundamentally unfair.

Even disregarding the Rule 404(b) testimony, there was adequate evidence to support the jury verdict. Concerning motive, the following testimony was presented: (1) Jeff Whitley, Louise Christian, and Jim Sizemore testified that Petitioner's mother had a heated argument with the victim and threatened to kill him the day before the fire because the victim that taken her office keys (including keys to the room containing the narcotic medication), removed her name from his banking account, and ordered her not to write any more prescriptions; (2) Testimony from Ms. Christian revealed that Petitioner had been visiting the pain clinic three or four times a week and his mother was giving him injections and medication; and (3) Testimony from Ms. Christian also revealed that that Petitioner's mother had been writing prescriptions in her own name and havd Ms. Christian give her the medication. Evidence was further presented that the victim stayed with Petitioner and his mother a week prior to death, but decided to move to his second home in Iaeger the weekend prior to his death. The victim's sons testified that when they arrived to move their father out of the Lively residence, the victim appeared upset, anxious, and scared. The victim allegedly told his sons that he was happy to get out of the Lively residence because he and Petitioner had "got into it" and he was afraid the Petitioner was going to hit him. Evidence was presented that Petitioner's mother was one of only a few people that knew the victim was going to be alone on the night before his death. Mr. Salyers gave a statement to police that he gave Petitioner and Mr. Salyers a ride to the victim's residence around 7:00 a.m. on the date of the victim's death. Mr. Butler testified that he passed the victim's home around 8:00 a.m. and noticed that the front door was open and a person was inside the house. Mr. Ritchie, an inmate at the regional jail, testified that Petitioner told him that he and Mr. Owens went to the victim's home steal to money and drugs and as they were leaving the home, Mr. Owens set the home on fire.

(Id., p. 36.) Petitioner complains that "the West Virginia Supreme Court of Appeals displays remarkable credulity and dis-ingenuity in asserting that because the mystery informant did not implicate the petitioner by name, but rather provided the fortuitous seed from which law enforcement's investigation blossomed, '[t]he information from the confidential informant did not implicate [the petitioner] in any manner.'" (Id.) Petitioner asserts "[t]his is not simply unreasonable, it is ridiculous." (Id., p. 37.) Petitioner argues that it is "ridiculous to claim that hearsay testimony on the part of law enforcement had – or was even intended to have – the effect merely of enlightening the jurors as to how law enforcement's journey of discovery began." (Id., p. 37.) Petitioner claims that the "testimony was a blatant and successful attempt to end-run around the Confrontation Clause and suggest to the jury that because the petitioner and Mr. Owens worked in concert, if Mr. Owens was supposedly sniffing around, then the petitioner was probably up to something, too." (Id.) Petitioner argues that "[t]his was a clear testimonial statement, despite the prosecuting attorney's and the state court's mischaracterizations to the contrary, and accordingly violates the proscriptions of the Sixth Amendment and *Crawford*." (Id.)

In his Motion for Summary Judgment, Respondent argues that Petitioner's above claim must be "dismissed as a matter of law because Petitioner cannot demonstrate that the State court adjudication resulted in a decision that was contrary to, or an unreasonable application of, clearly established federal law." (Document No. 37, pp. 31 - 33.) Respondent argues that Petitioner cannot demonstrate a violation of the Confrontation Clause. (Id., p. 31.) Respondent explains that "as recognized by the WVSCA in the direct appeal, there was no Confrontation Clause violation because the deputy's mention of the confidential informants statement was 'only to explain the reason he went to interview Mr. Owens.'" (Id., p. 32.) Respondent contends that "the purpose of

72

the statement was not to show that Mr. Owens was near the Whitley Clinic on the morning of the fire, but merely to provide the basis for why Mr. Owens was questioned by police." (Id.) Thus, Respondent argues that the statement was not even hearsay. (Id.) Respondent notes that "[t]here was no statement regarding Petitioner from the confidential informant" and "the right to confront an accuser does not apply when the witness is neither a witness nor provides information against Petitioner." (Id.) Finally, Respondent argues that "[e]ven if this Court were to find that the statement was testimonial and a violation of the Confrontation Clause, then the error was harmless." (Id.) Respondent explains that admission of the unidentified confidential informant statement was harmless because it only concerned the basis for the police officer's questioning of Mr. Owens and was not the basis for Petitioner's guilty verdict. (Id., p. 33.)

In his Response and Motion for Summary Judgment, Petitioner fails to specifically address the above issue. (Document No. 40.) Petitioner, however, states that he "incorporates, by reference, the factual basis, procedural history, standard of review, and all arguments stated or raised in his previous Petition [and] Memorandum in Support." (Id., p. 1.)

In Reply to Petitioner's Motion for Summary Judgment, Respondent first argues that "[w]hile Petitioner styles his pleadings as a Motion for Summary Judgment and requests, as an alternative argument, that he be granted summary, Petitioner's pleading is no more than a response to Respondent's Motion for Summary Judgment." (Document No. 41, p. 1.) Second, Respondent notes that Petitioner fails to specifically address the Confrontation Clause issue in his Response and Motion for Summary Judgment. (Id., p. 2.)

Regarding Petitioner's above claim, the West Virginia Supreme Court addressed the issue, in pertinent part, as follows:

. . . [T]he statement at issue arises from Deputy Blevins' testimony that a confidential informant reported to police that he saw Mr. Owens in Mr. Salyers' truck near Dr. Whitley's clinic the morning of the fire. Importantly, the confidential informant's statement was not admitted into evidence. Instead, the deputy testified that the information given to him by the confidential informant was the reason he sought to interview Mr. Owens and Mr. Salyers.

* * *

The substance of the . . . statement at issue, that of the confidential informant, merely reflected that a Mr. Owens was seen at Dr. Whitley's residence the morning of the fire. The deputy who referred to the statement in this testimony did so only to explain the reason that he went to interview Mr. Owens. The information from the confidential informant did not implicate the Defendant in any manner.

* * *

As stated earlier, neither statement at issue were offered as evidence at trial. Nor were the references to either by trial witnesses offered to prove the truth of the matter asserted. The first was offered to explain why law enforcement took the action to go and interview Mr. Salyers in conjunction with the investigation of the victim's death. . . . *See* Syl. Pt. 1, in part, *State v. Maynard*, 183 W.Va. 1, 2, 393 S.E.2d 221, 222 (1990)(holding, in part, that "[g]enerally, out-of-court statements made by someone other than the declarant while testifying are not admissible unless: 1) the statement is not being offered for the truth of the matter asserted, but for some other purpose such as motive, intent, state-of-mind, identification or reasonableness of the party's action . . . "). Under these circumstances, there was no error and no violation of the Confrontation Clause. Absent a finding of error, it is not necessary to proceed to the other steps of the plain error analytical framework. It is clear that the testimonial references to out-of-court statements had no adverse effect on the substantial rights of the defendant; and in no way adversely affected the fairness, integrity, or public reputation of the judicial proceedings in the proceeding below, the Court will not apply the plain error doctrine to this case.

(Document No. 23-2, pp. 103-09.)

The Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witness against him." U.S. Const. Amend. VI. Before testimonial hearsay evidence may be admitted, regardless of the inherent trustworthiness of the statement, the Sixth Amendment requires that a witness be unavailable and that there be a prior opportunity for cross examination. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). To establish a violation of the Confrontation Clause, a defendant must

establish that the court admitted an out-of-court statement that was (1) testimonial *and* (2) hearsay. Id. at 68, 124 S.Ct. at 1374. The Supreme Court explained that "testimonial" includes "at a minimum, prior testimony at a preliminary hearing, before a grand jury, or at a former trial; or to police interrogations." Id.; also see Davis v. Washington, 547 U.S. 813, 822, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006)(courts should ask whether the "primary purpose" of a statement was made "to establish or prove past events potentially relevant to later criminal prosecutions"). Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." W. Va. R. Evid. 801(c) (2000); also see Fed.R.Evid. 801(c). Whether a statement is hearsay, will most often hinge on the purpose for which the statement is offered. See United State v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985)("outlining the background of the investigation with the evidence not being offered to prove its truth, it could be said not to be nonadmissible as hearsay.") In Crawford, the Supreme Court specifically stated that the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." Id., 541 U.S. at 60, n. 9, 124 S.Ct. at 1370(citation omitted)(The admission of a non-hearsay statement does not implicate the Confrontation Clause.) It is well recognized "that out-of-court statements that explain or provide context for the actions of law enforcement officers are routinely admitted as non-hearsay." United States v. Washington, 461 Fed.Appx. 215, 221 (4th Cir. 2012); United States v. Silva, 380 F.3d 1018, 1020 (7th Cir. 2004)(explaining that "there is no doubt times when the testimony regarding a tip from an informant is relevant. If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out [the defendant] for nefarious purposes."); Love, supra, 767

F.2d at 1063 (4th Cir. 1985)("an out of court statement is not hearsay if offered for the limited purpose of explaining why a government investigation was undertaken") Thus, there is no violation of the Confrontation Clause where non-hearsay statements made by a confidential informant were admitted not for the truth of the matter asserted, but rather for limited, permissible purposes of explaining investigative activity that ensued. Washington, 461 Fed.Appx. at 220-21.

The undersigned finds that Petitioner's above claim is without merit because there is no evidence that the State *habeas* Court's determination was contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of facts. In the instant case, the record reveals that the confidential informant's statement was neither admitted into evidence nor offered as "testimonial hearsay" evidence at trial. The undersigned acknowledges that the confidential informant's statement appears to be testimonial in nature as the primary purpose of the statement was to establish past events potentially relevant to a criminal prosecution. Although the confidential informant's statements may have been testimonial in nature, the undersigned cannot find that the statement was offered "to prove the truth of the matter asserted." As stated above, the State court concluded that the confidential informant's statement was offered as permissible non-hearsay. Based upon a review of the record, the undersigned cannot conclude that the State court was unreasonable in its determination that the confidential informant's statement was not offered to prove the truth of the matter asserted. A review of the record supports a finding that Deputy Blevins testified concerning the confidential informant's statement to merely explain why law enforcement questioned Mr. Owens and Mr. Salyers as part of their investigation. Specifically, Deputy Blevins testified during Petitioner's underlying trial as follows:

Q.   As you continued to pursue the investigation in the weeks after Dr. Whitley's death, did you receive information that could be characterized as a tip or confidential report that Tommy Owens may have been seen near the Whitley Clinic the morning of the fire?

A.   Yes, I did.

Q.   In addition to that information and his name, did you also receive information concerning the type of motor vehicle that was seen there at the point where Mr. Owens was at the Whitley Clinic that morning?

A.   Yes, sir.

Q.   And was Tommy Owens - - without going into any other information, was Tommy Owens someone you were familiar with?

A.   Yes.

Q.   Based on that information that you received, was Tommy Owens questioned about that possibility?

A.   Yes, he was.

Q.   Did he represent to you that on the day of the fire, the morning of the fire, that he had been with Brian Salyers?

A.   Yes, he did.

Q.   Is that what then led to your desire to interview Brian Salyers about the events of the morning of the fire at Dr. Whitley's house?

A.   Yes. That's what originally led us to talk to Mr. Salyers.

Q.   That was because Tommy Owens had said he'd been with him.

A.   Yes.

(Document No. 23-10, pp. 121-22.) Thus, the foregoing testimony clearly qualifies as non-hearsay.

Deputy Blevins' testimony involved an out-of-court statement by a confidential informant, which explained or provided context for the actions of law enforcement officers concerning their investigation. The admission of such "context" evidence does not offend the Confrontation Clause

77

because the declarant is not a witness against the accused. See Crawford, 541 U.S. at 51, 59-60 n. 9, 124 S.Ct. 1354. There is no indication in the record that the confidential informant's statement was presented for the truth of the matter asserted. The confidential informant's statement that he saw Mr. Owens at the victim's residence was presented to explain why Deputy Blevins questioned Mr. Owens, who informed the police that he had been with Mr. Salyers on the morning of the fire. Upon interviewing Mr. Salyers, police obtained a statement from Mr. Salyers that inculpated Mr. Owens and Petitioner. Specifically, Mr. Salyers stated that he gave Mr. Owens and Petitioner a ride to the victim's residence around 7:00 a.m. on the morning of the fire. Although Mr. Salyers recanted his statement at trial, the State introduced Mr. Salyers' prior statement. Thus, there is no indication that the confidential informant's statement was offered for the truth of the matter asserted. Furthermore, there is no indication that Deputy Blevins testified concerning any type of statement made by the confidential informant concerning Petitioner. Based on the foregoing, the undersigned finds that the State *habeas* Court's determination on the above claim was not contrary to, or an unreasonable application of, clearly established federal law; or based on an unreasonable determination of the facts.[10] Accordingly, the undersigned respectfully recommends that

---

[10] Although the undersigned shares Justice Ketchum's opinion that the State Court's decision as to certain issues were incorrect or erroneous, such is insufficient to satisfy the Section 2254(d) standard. As stated above, it is well established that a "federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 412-13, 120 S.Ct. at 1523; *Woods v. Donald*, 575 U.S. ___, 135 S.Ct. 1372, 191 L.Ed.2d 464 (2015)(For a state court's decision to be an unreasonable application of clearly established federal law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice.") To obtain *habeas* relief from a federal court, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103, 131 S.Ct. at 786. If there could be fairminded disagreement, *habeas* relief may not be granted. *See Virginia v. LeBlanc*, 582 U.S. ___,

Respondent's Motion for Summary Judgment be granted Petitioner's Motion for Summary Judgment be denied as to the above claim.

## **PROPOSAL AND RECOMMENDATION**

The undersigned therefore hereby respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that the District Court **GRANT** Respondent's Motion for Summary Judgment (Document No. 36), **DENY** Petitioner's Motion for Summary Judgment (Document No. 40), **DISMISS** Petitioner's Amended Petition Under 28 U.S.C. § 2254 for Writ of *Habeas Corpus* By a Person in State Custody (Document No. 19), and remove this matter from the Court's docket.

The parties are hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Thomas E. Johnston. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have seventeen days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Proposed Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which

---

137 S.Ct. 1726, 1729 (2017)(finding that the State court's decision did not diverge so fair from the dictates of federal law as to make it "so obvious that . . . there could be no 'fairminded disagreement' about whether the state court's ruling conflict with this Court's case law. . . . There [were] reasonable arguments on both sides.") Recently, the United States Supreme Court reiterated that the above standard was "meant to be a difficult standard to meet." *LeBlanc, supra*, 582 U.S. ___, 137 S.Ct. at 1728. The Supreme Court explained that "[a] proper respect for AEDPA's high bar for habeas relief avoids unnecessarily 'disturb[ing] the State's significant interest in repose for concluded litigation, den[ying] society the right to punish some admitted offenders, and intrud[ing] on state sovereignty to a degree matched by few exercises of federal judicial authority." *Id.*(citing *Harrington*, 562 U.S. at 103, 131 S.Ct. 770).

objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.) cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this "Proposed Findings and Recommendation" and to mail a copy of the same Petitioner and to counsel of record.

Dated: July 12, 2017.

Omar J. Aboulhosn
United States Magistrate Judge